**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In re:

        JOSEPH SEVERINO,
                      Debtor.

Chapter 11
Case No. 22-00769
Hon. Timothy A. Barnes

_____

**NOTICE OF MOTION**

TO: See attached list

PLEASE TAKE NOTICE that on **July 20, 2022, at 9:00 a.m.**, I will appear before the Honorable Timothy Barnes, or any judge sitting in that judge's place, and present the motion of Patten Family Finance, LLC, to convert this case to one under Chapter 7, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode. **When prompted identify yourself by stating your full name**.

**Meeting ID and password**. The meeting ID for this hearing is 161 329 5276 and the password is 433658. The meeting ID and password can also be found on the judge's page on the court's web site. To reach Judge Barnes' web page go to www.ilnb.uscourts.gov and click on the tab for Judges.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

1

## **CERTIFICATE OF SERVICE**

      I, Dawn R, Copley, certify that I served a copy of this Notice and the Motion to Convert on each person/entity shown on the attached list at the address shown and by the method indicated on the list on June 21, 2022, before 5:00 p.m.


      By: /s/ Dawn R. Copley
      One of Its Attorneys

Dawn R. Copley (MI P53343)
dcopley@dickinson-wright.com
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3108

## Service List

**Electronic Notice Sent Through the ECF System:**

Lina Toma, ltoma@carlsondash.com

Kurt M. Carslon, kcarlson@carlsondash.com

William S. Hackney, III, whackney@salawus.com

John H. Redfield, jredfield@cranesimon.com

Michael M. Tannen, mtannen@tannenlaw.com

Patrick S. Layng, USTPRegion11.ES.ECF@usdoj.gov

William B. Avellone, bill.avellone@charteredmgt.com

**Additional Notice Sent by First Class US Mail:**

Ally Bank
AIS Portfolio Services
4515 N. Santa Fe Ave.
Dept. APS
Oklahoma City, OK 73118

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA  23541

ABT
c/o Synchrony Bank
150 Corporate Blvd.
Norfolk, VA  23541

Ally Financial
200 Renaissance Center #B0
Detroit, MI  48243

Capital One
PO Box 31293
Salt Lake City, UT  84131

Capital One Bank (USA), NA
4515 N. Santa Fe Ave.
Oklahoma City, OK  73118

JPMorgan Chase Bank, NA
Bankruptcy Intake Team
700 Kansas Lane, Floor 01
Monroe, LA  71203

Citibank Advantage
PO Box 6241
Sioux Falls, SD  57117

Comenity Bank
PO Box 18278
Columbus, OH  43218

Gregory K. Stern, P.C.
53 West Jackson
Suite 1442
Chicago, IL  60604

Harvard Collection
4839 N. Elston Ave.
Chicago, IL  60630

Illinois Dept. of Revenue
Bankruptcy Unit
PO Box 19305
Springfield, IL  62794

Internal Revenue Service
Mail Stop 5014CHI
230 S. Dearborn St.
Room 2600
Chicago, IL  60604

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101

JPMorgan Chase Bank
PO Box 9013
Addison, TX  75001

John Scramuzzo
721 Oriole
Park Ridge, IL  60068

Midland Credit Management
PO Box 2037
Warren, MI  48090

One Main Financial
PO Box 1010
Evanville, IN  47706

OneMain Financial
PO Box 3251
Evansville, IN  47731

Portfolio Recovery Associates
PO Box 41067
Norfolk, VA  23541

Rachel Stearn Sandler
53 W. Jackson Blvd. #1442
Chicago, IL  60604

Santander Consumer USA, Inc.
PO Box 961245
Fort Worth, TX  76161

TCF Bank
2508 South Louise Ave.
Sioux Falls, SD  57106

US Bank
PO Box 5229
Cincinnati, OH  45201

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| JOSEPH SEVERINO | ) Case No.: 22-00769 |
| | ) Hon. Timothy A Barnes |
| Debtor. | ) |
| | ) |
| | ) Presentment of Motion: |
| | ) July 20, 2022, 9:00 a.m. |

### MOTION TO CONVERT

Patten Family Finance, LLC ("Patten"), by and through its undersigned attorneys, moves the Court to convert this case to one under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b).

Pursuant to Section 1112(b)(1), a court must either dismiss or convert a Chapter 11 case to one under Chapter 7 - whichever is in the best interests of the creditors and the estate - when "cause" has been demonstrated. The decision whether to dismiss or convert is in the court's discretion. Although dismissal would suit Patten's interest equally as well, Patten has styled this Motion as one to convert because it submits that conversion, rather than dismissal, may be in the best interest of the Debtor's other creditors and the estate, given that the estate currently has equity in the property located at 1392 W. Old Mill Road, Lake Forest, Illinois 60045 (the "Lake Forest Property") (which is diminishing as more fully described below).

### ARGUMENT

Section 1112(b)(1) states:

> Except as provided in paragraph 2 and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate.

Section 1112(b)(4) enumerates examples of what constitutes "cause" but this is not an exhaustive list. *In re Royalty Properties, LLC*, 604 B.R. 742, 747 (Bankr. N.D.Ill. 2019) ("Section 1112(b)(4) provides a non-exhaustive list of examples of 'cause'."); *In re Bovino*, 496 B.R. 492, 499 (Bankr. N.D..Ill. 2013) (Barnes, T.) ("Section 1112(b)(4) lists different actions included in the definition of 'cause,' but that list is not exhaustive."). Further, "cause" warranting conversion to Chapter 7 also includes the lack of "reasonable likelihood of confirming a plan." *In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D.Ill. 2018); *see also In re Burgess*, 2013 WL 5874616 (Bankr. N.D.W.V., Oct. 30, 2013) citing *In re Ramreddy, Inc.*, 440 B.R. 103, 113 n. 26 (Bankr. E.D.Pa. 2009) (a debtor's inability to propose a feasible plan, by itself, constitutes cause for conversion).

Cause exists to convert this case to Chapter 7 because: (i) there has been continuing diminution of the estate and there is an absence of a reasonable likelihood of rehabilitation (Section 1112(b)(4)(A)); (ii) the Debtor's failure to maintain the appropriate insurance on the Lake Forest Property (Section 1112(b)(4)(C)); (iii) the Debtor's failure to pay the real property taxes that have become due on the Lake Forest Property (Section 1112(b)(4)(I)); and (iv) there is no reasonable likelihood that the Debtor will be able to confirm a Subchapter V plan.

**I.      Cause to convert exists pursuant to Section 1112(b)(4).**

Although any one of the examples enumerated in Section 1112(b)(4) is sufficient to constitute cause for conversion, not less than three of statutory examples exists in this case. *In re Congaree Triton Acquisitions, LLC*, 492 B.R. 843, 851 Bankr. D.S.C. 2012) ("The presence of any one of these statutory factors, or other factors deemed important by the bankruptcy court, is sufficient to warrant dismissal or conversion."), quoting *In re Jackson*, 1997 WL 467534 at *3 (4th Cir., Aug. 15, 1997).

2

A. **Section 1112(b)(4)(A)**

Cause exists pursuant to Section 1112(b)(4)(A) which provides that a case must be converted or dismissed if (i) there is "substantial or continuing loss to or diminution of the estate", and (ii) there is an "absence of a reasonable likelihood of rehabilitation."

There is continuing diminution to the estate in this case. Patten holds a first priority security interest in the Lake Forest Property and the Urbanos hold a second priority security interest. As of the Petition Date, Patten's secured claim was $975,905.92 and the Urbanos secured claim was $719,493.03[1]. In his Subchapter V Plan, the Debtor values the Lake Forest Property at $2.2 Million. Thus, by the Debtor's own admission, both Patten and the Urbanos are oversecured, and the Debtor had equity in the Lake Forest Property as of the Petition Date.

But, the equity the Debtor has in the Lake Forest Property is quickly deteriorating. Pursuant to Section 506(b), as oversecured creditors, Patten and the Urbanos are entitled to postpetition interest and reasonable fees, costs and other charges. As time has passed since the Petition Date, interest, fees and costs on the secured creditors' claims have accrued, and will continue to accrue, and the Debtor's equity in the Lake Forest Property diminishes, leaving less value available for payment to the Debtor's other creditors.

Moreover, since owning the Lake Forest Property, the Debtor has never, himself, paid the real property taxes on the property. Specifically, the Debtor has failed to pay prepetition real property taxes owing as shown on the Estimate of Redemption (attached as Exhibit A) obtained from Lake County, Illinois which indicates that due to the Debtor's failure to pay real property taxes owing for 2020, Lake County sold the taxes on December 6, 2021 to Scribe Funding LLC.

---

[1] According to the Proof of Claim filed by the Urbanos on April 1, 2022, Claim No. 19.

3

As of June 10, 2022, the amount required to redeem the sold real property taxes was $21,929.98. The Debtor's failure to pay these real property taxes represents a continuing risk of loss to the Debtor's creditors and estate, particularly if the taxes remain unpaid as of the June 27, 2024, the redemption period expiration, resulting in Scribe Funding being entitled to the issuance of a tax deed which would extinguish not only the secured creditors' security interest but the Debtor's equity as well.[2]

The Debtor has no reasonable likelihood of rehabilitation. "The issue of rehabilitation for purposes of Section 1112(b)(4)(A) 'is not the technical one of whether the debtor can confirm a plan, rather, whether the debtor's business prospects justify continuation of the reorganization effort.'." *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D.Ill. 2009), quoting *In re Rey*, 2006 WL 245735, *6 (Bankr. N.D.Ill. 2006). Here, the Debtor's business and income prospects to do not justify continuation of this Subchapter V case. To date, the Debtor has filed two Monthly Operating Reports, for the periods ending February 28, 2022 (Doc #35) and March 31, 2022 (Doc #42).[3] In both of these Monthly Operating Reports, the Debtor admits that he has failed to pay all of his bills on time, that he had $0 income, $0 cash receipts and $0 cash flow, and that he has "[m]ade or deferred payments" to numerous creditors. The Debtor has made no financial progress since the Petition Date.

Further, in his Plan, the Debtor proposes to make plan payments to his creditors from his income from employment he says was to commence on June 13, 2022. At the Status Hearing on May 9, 2022, Debtor's counsel informed the Court and the parties present that the Debtor was in

---

[2] In order to protect its security interest, prepetition, Patten paid taxes for tax year 2019, that had been sold by Lake County and were in the redemption period in the amount of $52,410.05. Patten has asserted reimbursement for its payment of these taxes in its Proof of Claim (Claim No. 11).

[3] The Debtor's failure to timely file the Monthly Operating Reports for April and May, 2022, is an additional basis for cause for conversion pursuant to Section 1112(b)(4)(F).

the process of finalizing his employment contract and would disclose that contract once finalized. The Debtor has not yet disclosed his employment contract even though it is now past the date on which his employment was to start. In fact, Patten's counsel sent Debtor's counsel an email on June 10, 2022 (the "June 10 Email," copy attached as Exhibit B), specifically inquiring about the status of the Debtor's employment but has received no response to date. The Debtor has failed to provide any confirmation of his employment prospects to this Court or the parties in interest. The Debtor simply does not have the means to rehabilitate.

> Here, for starters, the Court notes that there is no operating business, no cash flow, no revenues, and no incremental progress toward the filing of a feasible plan. The Debtor has simply failed to demonstrate that he has any tangible capitalization, enforceable financing, or cash flow that can support his current obligations or plan objectives. *See In re Kanterman*, 88 B.R. 26, 28-29 (finding no likelihood of rehabilitation when debtor lacked independent income and was not meeting any post-petition obligations, including tax obligations). Chapter 11 cases do not reorganize on hope, interminable litigation, delays, or an absence of financial resources.
>
> *In re Sakon*, 617 B.R. 7, 15-16 (Bankr. D.Conn. 2020).

The Debtor has no business to rehabilitate or income prospects that justify continuing this Subchapter V case and thus, cause exists to convert the case to one under Chapter 7.

### B. Section 1112(b)(4)(C)

Under Section 1112(b)(4)(C), a Chapter 11 case must be dismissed or converted when a debtor "fail[s] to maintain appropriate insurance that poses a risk to the estate or to the public." Patten has repeatedly requested from the Debtor proof that he maintains insurance on the Lake Forest Property yet the Debtor has never provided such proof, causing Patten to obtain forced-place insurance to protect its security interest. Recently, the Debtor submitted a Declaration (copy attached as Exhibit C) to Patten, purportedly evidencing a current valid insurance policy on the Lake Forest Property with State Farm Fire and Casualty Company. But, when a Patten representative inquired to State Farm about the policy she was informed that the Declaration was

5

merely a proposal and that the policy was not in effect because the premium had never been paid. On May 13, 2022, Patten's counsel emailed Debtor's counsel informing him of what Patten had learned from State Farm and requesting that the Debtor provide proof a of current valid insurance policy, including evidence of the premiums paid by the Debtor. Debtor's counsel's response was that he would forward the email on to his client. (See June 10 Email which includes the May 13 email string). In the June 10 Email, Patten's counsel again requested confirmation that the Debtor maintained current insurance on the Lake Forest Property but has received no such confirmation to date.

The Debtor's failure to maintain insurance on the Lake Forest Property poses a risk to the estate. The Lake Forest Property is currently insured only to the extent of Patten's forced-place insurance which Patten maintains only to protect its own security interest. The Debtor has not appropriately maintained insurance on the Lake Forest Property to protect the estate's equity interests, or the interests of his secured creditors. The Debtor's failure to, himself, maintain insurance on the Lake Forest Property constitutes cause to convert this case to Chapter 7. *See In re Dickey*, 559 B.R. 547 (D.Mass. 2016); *In re Sanders*, 2010 WL 5136192 (Bankr. D.S.C., Apr. 29, 2010); *In re Gilroy*, 2008 WL 4531982 (1st Cir. BAP, Aug. 4, 2008).

C. **Section 1112(b)(4)(I)**

Section 1112(b)(4)(I) provides that a case must be dismissed or converted when the debtor "fail[s] timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief". Attached is a copy of information pulled from the tax records of Lake County, Illinois (the "Property Tax Information," copy attached as Exhibit D) that indicates that the real property taxes for the Lake Forest Property for 2021, that came due on June 6, 2022, totaling $10,763.89 as of June 10, 2022, have not been paid. The Debtor's failure to pay the real

6

property taxes owing after the Petition Date constitutes cause to convert this case to Chapter 7 pursuant to Section 1112(b)(4)(I).

II. **Cause to convert exist because the Debtor is unable to effectuate a feasible Subchapter V Plan.**

   A. **The Plan is not feasible because the Debtor is unable to show a firm commitment for financing.**

The cornerstone of the Debtor's Plan is the proposed refinancing in the amount of $1.8 Million relating to the Lake Forest Property. The proposed lender, Legalist DIP GP, LLC ("Legalist"), is not a traditional lending institution such as a national or state banking institution. Yet, the Debtor has disclosed no information about Legalist such as evidence that Legalist has the financial wherewithal to actually provide the funding proposed. The Term Sheet that the Debtor attaches to his Plan states that "[p]rior to the satisfaction of the Conditions Precedent to funding, this Term Sheet shall be confidential, non-binding, for discussion purposes only, and not a commitment to lend." The Conditions Precedent stated in the Term Sheet include Legalist's completion of due diligence (without identifying what that due diligence entails), the Debtor's delivery of a fully executed credit agreement, and the Bankruptcy Court's entry of an order approving the loan. This Court has not approved the loan (the Debtor hasn't even filed a motion requesting such approval) and Debtor has not disclosed whether any of the other Conditions Precedent have been met. The Debtor also repeatedly states in the Plan that the Term Sheet is "unnegotiated" and "not fully negotiated," and the Term Sheet is unsigned by both the Debtor and Legalist. The Term Sheet contemplates that the loan will be made in multi-draws but neither the Term Sheet nor the Plan indicate the amount and timing of each draw, making it impossible to determine whether the first draw will be sufficient to pay Patten's secured claim (in the full amount of Patten's secured claim, not the reduced amount the Debtor proposes) on the Effective Date as required by Section 2.5 of the Debtor's Plan.

Most importantly, the Term Sheet provides a superpriority security interest[4] in all of the Debtor's property, including the Lake Forest Property. The Term Sheet provides that Legalist will be granted an "automatically perfected security interests…, senior to all pre- and postpetition liens, on all present or future estate property [.]"

In order to grant superpriority to Legalist the Debtor must comply with Section 364(d), which the Debtor is unable to do because he is unable to provide Patten with the adequate protection it is entitled to under Section 364(d)(1)(B).

As set forth above, the Debtor values the Lake Forest Property at $2.2 Million. The Debtor proposes refinancing from Legalist of $1.8 Million and granting Legalist a superpriority lien over Patten's and the Urbanos' existing mortgages. The difference between the $2.2 Million value of the Lake Forest Property and the $1.8 Million financing (less the Commitment Fee required by the Term Sheet) is less than $400,000 which is not enough to provide adequate protection as required by Section 364(d)(1)(B) for Patten's security interest for its secured claim that is well over $1 Million. The only permissible way that the Debtor can be authorized to grant Legalist a superpriority lien is if the Plan unequivocally provides that Patten's secured claim will be paid in full from the proceeds of the refinancing loan – with disbursements made directly to Patten at the closing of the refinancing rather than the funds being disbursed to the Debtor - and Legalist's lien will not attach to the Lake Forest Property until Patten's secured claim is paid in full.

Section 1123(a)(5) requires the Debtor to provide adequate means for his Plan's implementation. According to the Term Sheet, Legalist is not obligated to provide the $1.8 Million refinancing unless it is granted superpriority, which the Debtor will not be authorized to provide.

---

[4] The superpriority provision is contained on page 2 of the version of the Term Sheet that was delivered to Patten a few days prior to the Debtor's filing of the Plan but is not contained in the version of the Term Sheet attached to the Debtor's Plan.

8

*See Aurora Memory Care,* 589 B.R. at 640 ("To demonstrate feasibility, a debtor need not guarantee the plan's success, but the debtor must give a 'reasonable assurance of commercial viability.' … As evidence [of refinancing], AMC attaches T2's March 28 letter of intent. The letter, though, declared that it was 'presented for discussion purposes only and does not constitute an offer, agreement, or commitment to lend.' At most, then T2 expressed an interest in discussing a loan. T2 made no financing commitment. AMC has produced no financing commitment from T2 or anyone else.") (internal citations omitted). The same is true in this case. The purported Term Sheet is <u>not</u> a commitment to lend. At best, it is an offer to negotiate at a date sometime in the future. Because the proposed refinancing is the cornerstone of the Debtor's Plan, without it, the Debtor does not have adequate means for implementation of his Plan and the Plan is not feasible.

**B. The Plan is not feasible because the proposed refinancing would be insufficient to properly fund the Plan.**

As shown on the attached Exhibit E, even with the refinancing the Debtor proposes, the proceeds of the proposed refinancing will be insufficient to pay the secured claims of Patten and the Urbanos, plus the administrative expenses that must be paid on the effective date of the Plan. 11 U.S.C. § 1129(a)(9)(A). Because a Subchapter V plan cannot be confirmed unless the administrative expense claims are paid in full on the effective date, the Debtor's Plan is not feasible.

**C. The Plan is not feasible because the Debtor has provided no evidence of his employment.**

As set forth above, the Debtor has also failed to provide sufficient information relating to his future employment – the income from which the Debtor proposes to use to pay his unsecured creditors – to satisfy the requirement of Section 1123(a)(5) that the Debtor provide adequate means of implementation of his Plan.

9

Section 18.3 of the Plan states that '[t]he Debtor will be employed by Wisconsin Phone Charging, LLC ("WPC") beginning on June 13, 2022 at the annual base salary of $340,000 with incentive bonuses based on his production as sales manager." It is unclear from this statement whether the Debtor's annual base salary will be $340,000/year with the possibility of additional incentive bonuses that will increase Debtor's income to over $340,000/year, or whether the $340,000 is Debtor's estimate of his annual income including base salary and incentive bonuses.

Although a Subchapter V debtor is not required to file a complete Disclosure Statement, the Debtor is still required to comply with Section 1125(a) by providing "adequate information" sufficient to assist his creditors in determining whether they should consent to the Plan or vote in favor of it. As stated above, at the May 9, 2022 Status Hearing, Debtor's counsel informed the Court and the parties present that the Debtor would submit his employment contract once it is finalized. To date, the Debtor has not produced the employment contract despite his purported June 13 employment start date having passed and despite a written request for such information as set forth in the June 10 Email. Unless he can provide evidence of his employment, the Debtor cannot show that he can provide adequate means for the Plan's implementation as required by Section 1123(a)(5) and the Plan is not feasible. See, *In re Roland*, 77 B.R. 265 (Bankr. D.Mon. 1987) (finding that the proposed income source was "very speculative as well as questionable" where the debtor proposed to find employment in a type of job he had not held for two years); *In re GAC Storage Lansing, LLC*, 485 B.R. 174, 182 and 189 (Bankr. N.D.Ill. 2013) (the feasibility requirement of Section 1129(a)(11) mandates that the plan proponent offer concrete evidence of cash flow to fund and maintain both its operations and its obligations under the Plan; the Plan cannot unfairly shift the risk of failure to creditors.); *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 169 (Bankr. N.D.Ill. 2012) ("[A] plan meets the feasibility standard only if it 'offers a reasonable prospect of success and is workable.' *In re Patrician St. Joseph Partners Ltd.*, 169 B.R.

10

669, 674 (D.Ariz. 1994). The central inquiry is 'whether there is a reasonable probability the provisions of the plan can be performed.' *In re G-I Holdings, Inc.*, 420 B.R. 216, 267 (D.N.J. 2009). *In re Hoffman*, 52 B.R. 212, 215 (Bankr. D.N.D. 1985).") ("Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are visionary promises."); *In re Claar Cellars LLC*, 623 B.R. 578, 592 (Bankr. E.D.Wa. 2021) (Court held that plan could not be confirmed where the plan contained five-year operational projections but contained no trigger requiring the debtor to shift course if the projections proved unattainable.).

## CONCLUSION

For the reasons shown above, Patten requests that the Court enter an Order converting this Chapter 11, Subchapter V case to one under Chapter 7 of the Bankruptcy Code.

Respectfully submitted:

| Dated:  June 21, 2022 | DICKINSON WRIGHT PLLC<br><br>By:  /s/ Dawn R. Copley<br>   Dawn R. Copley (MI  P53343)<br>   Andrew H. Eres<br>   500 Woodward Avenue, Suite 4000<br>   Detroit, MI  48226<br>   313-223-3108<br>   dcopley@dickinsonwright.com |
|---|---|
|  |  |

11