**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Joseph Severino |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court | **Northern District of Illinois** |
| Case number: | **22-00769** |

FILED

U.S. Bankruptcy Court
Northern District of Illinois

2/18/2022

Jeffrey P. Allsteadt, Clerk

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Patten Family Finance, LLC <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☒ No <br> ☐ Yes. From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Patten Family Finance, LLC | Patten Family Finance, LLC – Attn: Amy Smith |
| Name | Name |
| Dawn R Copley <br> Dickinson Wright PLLC <br> 500 Woodward Ave., Suite 4000 <br> Detroit, MI 48226 | 665 Simonds Rd. <br><br> Williamstown, MA 01267 |
| Contact phone 3132233108 | Contact phone 4134584564 |
| Contact email dcopley@dickinsonwright.com | Contact email asmith@inlandinc.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____ <br> MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ |

Official Form 410                     Proof of Claim                     page 1

EXHIBIT
1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6.** Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:      0021 |

**7.** How much is the claim?     $    975905.92

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Commercial Promissory Note for financing provided to the Debtor

**9.** Is all or part of the claim secured?

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☑ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe:  Collateral Ass. of Leases and Rents; UCC

**Basis for perfection:**  Rec. Mortgage; AOR; UCC

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | |
|---|---|
| **Value of property:** | $   2000000.00 |
| **Amount of the claim that is secured:** | $   975905.92 |
| **Amount of the claim that is unsecured:** | $   0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.) |

**Amount necessary to cure any default as of the date of the petition:**   $   975905.92

**Annual Interest Rate** (when case was filed)   18   %

☑ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11.** Is this claim subject to a right of setoff?

☑ No
☐ Yes. Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  2/18/2022
MM / DD / YYYY

/s/ /s/ Dawn R Copley

Signature

Print the name of the person who is completing and signing this claim:

Name  /s/ Dawn R Copley

First name  Middle name  Last name

Title  Attorney and agent for Patten Family Finance, LLC

Company  Dickinson Wright PLLC

Identify the corporate servicer as the company if the authorized agent is a servicer

Address  500 Woodward Ave., Suite 4000

Number  Street

Detroit, MI 48226

City  State  ZIP Code

Contact phone  3132233108  Email  dcopley@dickinsonwright.com

ATTACHMENT TO PROOF OF CLAIM OF
PATTEN FAMILY FINANCE, LLC ("Patten Family")


On January 17, 2020, Joseph Severino ("Debtor") entered into a Loan Agreement with Capital Funding Financial, LLC ("Capital") under which Capital made a commercial loan to Debtor in the principal amount of $715,000.00. The loan is evidenced by a Commercial Promissory Note dated January 17, 2020 (the "Note") in favor of Capital. Repayment of the debt owing under the Note is secured by a Commercial Mortgage, Security Agreement and Fixture Filing (the "Mortgage") executed by Debtor on January 17, 2020 and recorded in Lake County, Illinois on January 28, 2020, which encumbers real property located at 1392 W. Old Mill Rd., Lake Forest, IL 60045 (the "Property"). Repayment of the debt owing under the Note is further secured by a Collateral Assignment of Leases and Rents ("Assignment of Rents") executed by Debtor on January 17, 2020, and recorded in Lake County, Illinois on February 6, 2020. On January 28, 2020, Capital filed and recorded a UCC Financing Statement (the "UCC Statements") naming Debtor as borrower and Capital as secured party.

On January 17, 2020, Capital executed an Allonge (the "Allonge") through which Capital assigned the Note to Patten Family, and an Assignment of Commercial Mortgage, Security Agreement, Fixture Filing and Collateral Assignment of Leases & Rents (the "Assignment") through which Capital assigned the Mortgage and Assignment of Rents to Patten Family. The Assignment was recorded in Lake County, Illinois on May 14, 2020. On February 25, 2020, Patten Family filed a UCC Financing Statement Amendment (the "UCC Statement Amendment") substituting Patten Family for Capital as secured party.

The Note matured on January 7, 2021. As of the Petition Date, Debtor is indebted to Patten Family for the principal, interest, late charges, legal fees, reimbursement of real estate taxes and reimbursement of property insurance due and owing under the Note, broken down as follows:

| | |
|---|---|
| Principal | $715,000.00 |
| Accrued interest | $170,781.72 |
| Late charges | $  1,785.72 |
| Legal fees | $ 29,303.43 |
| Taxes | $ 52,410.05 |
| Insurance | $  6,625.00 |
| | |
| Total debt as of 1/24/2022 | $975,905.92 |

Interest on the debt continues to accrue at $345.96774 per diem, as well as late charges, legal fees, reimbursement for property taxes and reimbursement for insurance that accrue after the Petition Date, until the total debt owing under the Note is paid in full. Patten Family reserves the right to amend this Proof of Claim as these charges accrue and become known.

Copies of the Loan Agreement, Note, Mortgage, Assignment of Rents, UCC Statements, Allonge, Assignment and UCC Statement Amendment are attached.

The loan made to Debtor was for commercial purposes as stated in paragraph 9 of the Note and acknowledged by Debtor's execution of the Note.  Nonetheless, because Debtor has asserted in his Bankruptcy Petition that he currently resides at the Property, in addition to this Proof of Claim out of an abundance of caution Patten Family has also filed a Mortgage Proof of Claim even though a Mortgage Proof of Claim is not required for a property that is intended to be held for commercial purposes.

## LOAN AGREEMENT

This Loan Agreement (this "Agreement"), made as of **January 17, 2020,** by and between **CAPITAL FUNDING FINANCIAL LLC,** a Florida limited liability company, at its principal place of business at **2234 N Federal Hwy #542, Boca Raton, FL 33431,** its successors and/or assignees as their interests may appear ("Lender") and **JOSEPH SEVERINO,** an individual, having an address at **721 Oriole Ave., Park Ridge, IL 60068** ("Borrower").

### WITNESSETH

**WHEREAS,** Borrower has requested that Lender make a loan to Borrower in the amount of **Seven Hundred Fifteen Thousand and 00/100 Dollars ($715,000.00)** (the "Loan"), subject to and upon the terms and conditions hereinafter contained, which is evidenced by the Commercial Promissory Note made by Borrower in favor of Lender, dated **January 17, 2020** (as same may be amended, restated, or modified from time to time, the "Note"), secured by that certain Commercial Mortgage, Security Agreement and Fixture Filing (the "Mortgage") made by Borrower in favor of Lender and which Mortgage encumbers the premises known as **1392 West Old Mill Rd., Lake Forest, IL  60045** (the "Property") (the "Mortgaged Property") (this Agreement, the Note, the Mortgage, and any other documents or agreements given to Lender by Borrower or any guarantor, if applicable, in connection with the Loan whether or not specifically set forth herein, as each may be amended, restated or modified from time to time, may hereinafter be collectively referred to as the "Loan Documents"); and

**WHEREAS,** Lender has agreed to make the Loan to Borrower on the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** in consideration of the foregoing and of the covenants and conditions hereinafter set forth, Borrower and Lender hereby agree as follows:

### ARTICLE 1: THE LOAN

**1.01 Loan.**

**(a)** Subject to all terms and conditions of this Agreement, Lender may loan to Borrower and Borrower may borrow from Lender, from time to time, up to **Seven Hundred Fifteen Thousand and 00/100 Dollars ($715,000.00)** ("Loan"). Said **Seven Hundred Fifteen Thousand and 00/100 Dollars ($715,000.00)** is also sometimes referred to herein as the "Maximum Principal Amount".

(b) Advances made pursuant to this **Section 1.01** shall be evidenced by the Note, and shall be referred to as the 'Obligations." The aggregate of such advances under the Loan shall not exceed said Maximum Principal Amount.

(c) Subject to a final closing statement prepared by Lender's counsel and executed by Borrower (the "Closing Statement"), the Loan proceeds shall be disbursed as follows:

(1) The sum of **Sixteen Thousand Eighty-seven and 50/100 Dollars ($16,087.50)** shall be disbursed on behalf of Borrower and simultaneously paid to Lender as a fully earned, non-refundable fee (the "Origination Fee") in consideration of Lender's commitment to make the Loan on the terms and conditions stated herein. In no event shall the Fee be applied or credited in reduction of any principal, interest, or other sum payable hereunder; and

(2) The sum of **Two Thousand Nine Hundred Seventy-six and 15/100 Dollars ($2,976.15)** shall be disbursed by Lender on behalf of Borrower and simultaneously paid to Lender (the "Prepaid Interest") which shall be credited against interest payments due under the terms of the Note, as such interest payments become due; and

(3) The sum of **One Thousand Four Hundred Ninety-five and 00/100 Dollars ($1,495.00)** shall be disbursed by Lender on behalf of Borrower and simultaneously paid to **DiNatale Law Group (David DiNatale, Esq.)**, in payment of its legal fees;

(4) The sum of **One Thousand Nine Hundred Ninety-five and 00/100 Dollars ($1,995.00)** shall be disbursed by Lender on behalf of Borrower and simultaneously paid to Lender (the "Underwriting Fee"); and

(5) The sum of **One Thousand Five Hundred Ninety-five and 00/100 Dollars ($1,595.00)** shall be disbursed by Lender on behalf of Borrower and simultaneously paid to Lender (the "Processing Fee").

The remaining funds shall be disbursed to the Borrower. Payments of interest only, on the principal amount of the Note, in arrears, shall be due from Borrower on the first day of each and every month commencing on **March 1, 2020** and running through the Maturity Date of **January 17, 2021**, as more particularly set forth in the Note. In the event Borrower fails to make a payment within ten (10) calendar days of the date such payment becomes due, Lender shall have the option, exercisable in its sole discretion, to require interest payments to be paid weekly, in arrears, on the Wednesday of each week during the term of the Loan.

**1.02 Use of Proceeds.** Borrower agrees that the Loan proceeds disbursed to Borrower will be used only for the finance of the property located at **1392 West Old Mill Rd., Lake Forest, IL 60045** (the "Property").

**1.03 Conditions Precedent to Lender's Obligations.** Lender shall not be obligated to make the Loan hereunder unless Lender shall have received the following, all in form and substance satisfactory to the Lender in all respects:

  (a) the Note, duly executed by Borrower;

  (b) the Mortgage, duly executed by Borrower;

  (c) this Agreement, duly executed by Borrower;

  (d) the Collateral Assignment of Leases and Rents, duly executed by Borrower for the Property;

  (e) the Collateral Assignment of Contracts, Plans, Permits, & Approvals, duly executed by Borrower for the Property

  (f) the Environmental Indemnity Agreement, duly executed by Borrower for the Property;

  (g) the Document Re-Execution Agreement, duly executed by Borrower;

  (h) the Closing Statement, duly executed by Borrower;

  (i) certificates of insurers, or other evidence satisfactory to Lender, indicating that Borrower has obtained the policies of insurance as are required under the terms of the Mortgage;

  (j) a paid title insurance policy (without survey exception) in the full amount of the Loan issued by a title insurance company acceptable to Lender ("Title Insurance Company") and insuring the Mortgage as a valid first lien on the Mortgaged Property, with such endorsements as Lender shall require and subject to the permitted exceptions identified in the Mortgage;

  (k) UCC-1 financing statements required to evidence or perfect Lender's security interest in the personal property affixed to the Mortgaged Property;

  (l) an appraisal of the Mortgaged Property;

  (m)   financial statements and tax returns for Borrower;

  (n) evidence of a search of the public records which discloses no conditional sales contracts, chattel mortgages, leases of personality, financing

statements or title retention agreements filed or recorded against the Borrower or the Mortgaged Property;

(o) a survey of the Mortgaged Property prepared in accordance with the "Minimum Standard Detail Requirements for ALTA and ACSM Land Title Surveys" jointly established by ALTA and ACSM in 2011, as updated, and certified to Lender by a registered land surveyor acceptable to the Lender ("Survey");

(p) copies of all permits or approvals required by any governmental authorities to such date with respect to Borrower or the Mortgaged Property, to the extent the same are necessary and appropriate to operate and develop the Mortgaged Property;

(q) operating agreement of Borrower certified by the Manager of Borrower;

(r) an incumbency certificate of Borrower which shall certify the names and titles of the officers/members of the Borrower authorized to sign, in the name and on behalf of Borrower this Agreement and each other Loan Document to be delivered pursuant to this Agreement by Borrower, together with the true signatures of such officers, upon which certificate the Lender may conclusively rely; resolutions or consents of the Borrower authorizing the transactions to be entered into by Borrower in connection with this Agreement;

(s) evidence that the Mortgaged Properties are not located in a federal or state flood hazard area;

(t) certification regarding debts and liens, executed by the owner of the Mortgaged Property;

(u) evidence demonstrating current full compliance with all applicable zoning, health, environmental and safety laws, ordinances and regulations (including, without limitation, approval of local, private or public sewage or water utility);

(v) certification from Borrower that Borrower is not a party to any existing or pending or threatened litigation, except as previously disclosed to Lender;

(w) evidence demonstrating receipt of all appropriate approvals meeting all applicable requirements of any federal, state, county or municipal governmental agency, board, commission, officer, official or entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government and having jurisdiction including, but not limited to, subdivision and site plan approvals, potable

water supply, sewage discharge and sewage connection, use of septic
tanks or alternatives;

(x) satisfactory evidence that all roads and utilities necessary for the full
utilization of the Mortgaged Property for its intended purposes have
been completed or the presently installed and proposed roads and
utilities will be sufficient for the full utilization of Mortgaged Property for
its intended purposes; and

(y) such other agreements, certificates or other documents as Lender or
Title Insurance Company may reasonably request.

### ARTICLE 2: REPRESENTATIONS, WARRANTIES, AND GENERAL COVENANTS

On the date hereof, and in order to induce Lender to enter into this Agreement, Borrower
represents, warrants, and covenants the following:

**2.01 Nature of Entity.** Intentionally deleted.

**2.02 Power and Authority.** Borrower has the power to execute, deliver, and carry out this
Agreement and to incur the Obligations, and has taken all necessary action to authorize the
execution, delivery and performance by Borrower of this Agreement and the incurring of
the Obligations.

**2.03 No Legal Bar.** The execution and delivery of this Agreement and compliance by
Borrower with any of the terms and provisions hereof or of any of the other agreements or
instruments referred to herein will not, on the date hereof, violate any provision of any
existing law or regulation or any writ or decree of any court or governmental
instrumentality, or any agreement or instrument to which Borrower is a party or which is
binding upon it or its assets, and will not result in the creation or imposition of any lien,
security interest, charge, or encumbrance of any nature whatsoever upon or in any of its
assets, except as contemplated by this Agreement; and no consent of any other party,
license approval or authorization of or registration or declaration with any governmental
bureau or agency, is required in connection with the execution, delivery, performance,
validity, and enforceability of this Agreement.

**2.04 No Material Litigation.** No petition for bankruptcy, whether voluntary or
involuntary, or assignment for the benefit of creditors, or any other action involving
debtors' and creditors' rights has been filed under the laws of the United States of America
or any state thereof, or is pending or threatened against Borrower. There are no claims,
suits, actions, litigation or proceedings, pending or threatened, at law or in equity, before
any court, public board or body or arbitrator, and there are no judgments, permits, decrees,
or orders which have been issued, which would materially and adversely affect any of the
obligations of Borrower under the Note or this Agreement, and Borrower has not filed for
an arrangement or a petition in bankruptcy nor has one been filed against Borrower.

**2.05 No Default.** Borrower is not, on the date hereof, in default with respect to the payment or performance of any of its obligations or in the performance of any covenants or conditions to be performed by it pursuant to the terms and provisions of any indenture, agreement, or instrument to which it is a party or by which it may be bound.

**2.06 Compliance with Laws.** Borrower has complied with and will continue to comply with all applicable statutes and regulations of the United States of America, and all states, counties, municipalities, and agencies of any thereof with respect to (i) the conduct of its business operations; and (ii) the use, maintenance, and operation of the real and personal properties owned or leased by it in the operation of its business.

**2.07 No Secondary Liabilities.** There are no outstanding contracts or agreements of guaranty or suretyship made by Borrower, or to which it is a party.

**2.08 Taxes.** Borrower has filed, caused to be filed, or obtained extensions for the filing of, and will continue to file and cause to be filed, all federal, state, and local tax returns required by law to be filed, and has paid and will continue to pay all taxes, including without limitation real estate taxes or on any assessment made against it, except if being contested in good faith.

**2.09 Financial Condition.** Borrower has submitted to Lender various financial statements and information, and represents that all of said financial information is true and correct, that such financial information fairly presents the financial condition of Borrower as of the date thereof and that, as of the date of said financial information submitted, there was no material unrealized or anticipated losses from any unfavorable commitments of Borrower, and that there has been no material adverse change in the business or assets or in the condition, financial or otherwise, of Borrower from that set forth in said financial statements. Borrower is solvent, is not bankrupt, is not contemplating, nor has recently contemplated or filed, for bankruptcy, receivership, or reorganization proceedings (nor is there any prospect of such). All of Borrower's obligations to any creditor are current and not in default.

**2.10 Representation Accuracy.** No representation or warranty by Borrower contained in any certificate or other document furnished or to be furnished by Borrower pursuant hereto or in connection with the transactions contemplated hereunder, contains, or at the time of delivery will contain, any untrue statement of material fact or omits or will omit to state a material fact necessary to make it not misleading.

**2.11 Cross-Default and Cross-Collateralized.** Borrower hereby acknowledges and agrees that a default under the terms and conditions of any other loans, obligations, liabilities, or indebtedness of Borrower (whether now existing or hereafter arising) with Lender or any other lender shall be deemed to be a default under the terms and conditions of the Note and this Agreement.

Additionally, any future loans, obligations, liabilities, or indebtedness of Borrower with Lender shall, at Lender's sole option, be cross-collateralized with this Loan, and to the

extent such cross-collateralization requires amendments or modifications to the Loan Documents, Borrower agrees to cooperate in good faith with Lender to accomplish such amendments and/or modifications.

**2.12. Additional Representations.** In addition, Borrower makes all representations and warranties to Lender as set forth on Schedule "A" attached hereto.

### ARTICLE 3: AFFIRMATIVE COVENANTS

Borrower covenants and agrees that, so long as any of the Obligations to Lender shall remain outstanding, Borrower will perform and observe each and all the covenants and agreements herein set forth.

**3.01 Payments Under this Agreement.** Borrower will make timely payment of all monies and will faithfully and fully keep and perform all of the terms, conditions, covenants, and agreements contained on Borrower's part to be paid, kept, or performed hereunder, and will be bound in all respects as debtor under this Agreement, the Note, and any other instruments or documents executed and/or delivered in connection herewith or therewith.

**3.02 Payment of Liabilities.** Borrower will pay and discharge at or before their maturity all taxes, assessments, rents, claims, debts, and charges, except where the dame may be contested in good faith and/or non-payment is advised by Borrower's counsel, and maintain, in accordance with generally accepted accounting principles and practice, appropriate reserves for the accrual of any of the same.

**3.03 Compliance with Laws, Care of Property.** Borrower will do, or cause to be done, all things necessary to comply with all laws, and to at all times maintain, preserve, and protect its property used or useful in the conduct of its business and keep the same in good condition and repair (normal wear and tear and obsolescence excepted), and from time to time make, or cause to be made, all needful and proper repairs, renewals, replacements, betterments, and improvements thereto.

**3.04 Notices.** All notices, requests, demands or other communications to or upon the respective parties hereto shall be made in accordance with the terms of the Mortgage.

**3.05 Insurance.** Borrower will keep the property insured in accordance with the terms of the Mortgage.

**3.06 Construction Completion.** Borrower shall complete all improvements on the Mortgaged Property, as contemplated by the budget delivered to the Lender (if applicable), on a timely basis and in a good and workman like, lien free manner, in accordance with all applicable governmental statues, laws, rules, orders, regulations and ordinances.

### ARTICLE 4: NEGATIVE COVENANTS

**4.01 Fundamental Changes.** So long as any Obligations of Borrower to Lender remain outstanding and unpaid, Borrower covenants and agrees that it will not merge or

consolidate with or into any other entity; dissolve or liquidate; convey, sell, lease, or otherwise dispose of all or substantially all of its property, assets, or business; change the present form, ownership, or control of its business.

## ARTICLE 5: DEFAULT

**5.01 Default.** Borrower hereby agrees that, if any Event of Default, as defined in the Note, Mortgage or a default under this Agreement, or a default under this Agreement shall occur, Lender may declare the entire unpaid balance owed under the Note, this Agreement, or other sums owed hereunder or under any such note, immediately due and payable without presentment, demand, protest, notice of protest, or other notice of dishonor of any kind, all of which are hereby expressly waived by Borrower. All such rights of Lender are cumulative, not exclusive, and enforceable alternatively, successively, or concurrently.

**5.02 Default Rate.** After the occurrence of an Event of Default, interest will accrue at the Default Rate, as defined in the Note.

## ARTICLE 6: INDEMNIFICATION OF AND REIMBURSEMENT TO LENDER

**6.01 Indemnification by Borrower.** Borrower shall indemnify and hold Lender harmless from and against any and all claims, demands, losses, judgments, liabilities, costs or expenses (including, without limitation, reasonable attorneys' fees and disbursements) which Lender may incur arising out of or resulting from the Note, this Agreement, the Lender's security interest in the Mortgaged Property, or enforcement or exercise of any right or remedy granted to the Lender under this Agreement. In no event shall Lender be liable to the Borrower for any matter or thing in connection with this Agreement other than to account for monies actually received by it.

**6.02 Cure by Lender.** Following an Event of Default, Lender may, but shall not be required to, do any act or thing which Borrower has covenanted to do hereunder or cause to be done or remedy any such breach and there shall be added to the Obligations of Borrower the cost or expense incurred by Lender in so doing, and any and all amounts expended by Lender in taking such action, shall be repayable to it upon its demand to Borrower therefor and shall bear interest from the date such cost or expense was incurred by Lender to the date paid in full at the rate of interest set forth in the Note.

**6.03 Reimbursement of Expenses.** Borrower shall pay to Lender all costs and expenses paid or incurred by Lender (including, without limitation, reasonable attorneys' fees and disbursements) in connection with the preparation for or any actual or attempted disposition of any of the Mortgaged Property. All such costs and expenses incurred by Lender shall be repayable to it upon its demand to Borrower and shall bear interest from the date the same were incurred to the date paid in full at the interest rate set forth in the Note.

## ARTICLE 7: MISCELLANEOUS

7.01 WAIVER OF RIGHT TO PREJUDGMENT REMEDY, NOTICE, AND HEARING. BORROWER (AND EACH AND EVERY ENDORSER, GUARANTOR, AND SURETY OF THIS NOTE) ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES

THE RIGHT TO NOTICE AND HEARING UNDER FLORIDA STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, AND FURTHER WAIVES DILIGENCE, DEMAND, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST AND NOTICE OF PROTEST AND NOTICE OF ANY RENEWALS OR EXTENSIONS OF THIS NOTE, AND ALL RIGHTS UNDER ANY STATUTE OF LIMITATIONS, AND AGREES THAT THE TIME FOR PAYMENT OF THIS NOTE MAY BE CHANGED AND EXTENDED AS PROVIDED IN SAID MORTGAGE OR ANY SECURITY AGREEMENT, WITHOUT IMPAIRING BORROWER'S LIABILITY THEREON, AND FURTHER CONSENTS TO THE RELEASE OF ALL OR ANY PART OF THE SECURITY FOR THE PAYMENT HEREOF, OR THE RELEASE OF ANY PARTY LIABLE FOR THIS OBLIGATION WITHOUT AFFECTING THE LIABILITY OF THE OTHER PARTIES HERETO. ANY DELAY ON THE PART OF THE HOLDER HEREOF IN EXERCISING ANY RIGHT HEREUNDER SHALL NOT OPERATE AS A WAIVER OF ANY SUCH RIGHT, AND ANY WAIVER GRANTED FOR ONE OCCASION SHALL NOT OPERATE AS A WAIVER IN THE EVENT OF ANY SUBSEQUENT DEFAULT.

7.02 JURY TRIAL WAIVER. BORROWER AND LENDER EACH HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, COUNTERCLAIM, OR CROSS-CLAIM ARISING IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO THE LOAN DOCUMENTS, THE OBLIGATIONS, THE MORTGAGED PROPERTY, ANY TRANSACTION ARISING THEREFROM OR RELATED THERETO, OR ANY DISPUTE INVOLVING BORROWER AND LENDER. FURTHER, EXCEPT AS PROHIBITED BY LAW, BORROWER WAIVES ANY RIGHT WHICH IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION BETWEEN THE PARTIES ANY SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER ACKNOWLEDGES AND AGREES THAT THIS SECTION 7.02 IS A SPECIFIC AND MATERIAL ASPECT OF THIS AGREEMENT AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS SECTION 7.02 WERE NOT A PART OF THIS AGREEMENT.

7.03 No Waiver by Lender. No course of dealing between Borrower and Lender and no failure to exercise or delay in exercising on the part of Lender any right, power, or privilege under the terms of this Agreement or under the terms of any other agreements, instruments, or other documents between Lender and Borrower shall operate as a waiver thereof; not shall any single or partial exercise of any right, power, or privilege hereunder or thereunder preclude any other or further privilege. The rights and remedies provided herein or in any other agreement are cumulative and not exclusive or in derogation of any rights or remedies provided in and thereof, by law or otherwise.

**7.04 Survival of Representations.** All agreements, representations, and warranties made herein, in any agreement and in any statements, notices, invoices, certificates, schedules, documents, or other instruments delivered to Lender in connection with the Agreement or any other agreement shall survive the making of the loans and advances hereunder.

**7.05 Further Documentation.** Borrower agrees that, at any time or from time to time upon written request of Lender, Borrower will execute and deliver such further documents and do such other acts and things as Lender may reasonably request in order to fully effect the purposes of this Agreement and the documents referred to herein. Borrower agrees that, to the extent any facts or circumstances reported on exhibits hereto are materially changed, whether by addition, subtraction, modification, etc., Borrower will promptly notify Lender of such changes, additions, subtractions, modifications, etc.

**7.06 Entire Agreement.** This Agreement, together with the other Loan Documents executed in connection herewith, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all prior proposals, negotiations, agreements, and understandings relating to such subject matter. In entering into this Agreement, Borrower acknowledges that it is not relying on any representation, warranty, covenant, promise, assurance, or other statement of any kind made by Lender or by any employee or agent of Lender.

**7.07 Rights of Assignees and Successors.** All rights of Lender in, to, and under this Agreement and any other instrument or document executed and/or delivered in connection herewith shall pass to and may be exercised by any assignee thereof. Borrower agrees that, in the event of an assignment of this Agreement and notice of such assignment to Borrower, the liability of Borrower to a holder for value of this Agreement shall be immediate and absolute and not affected by any actions of Lender and that Borrower will not set up any claim against Lender as a defense, counterclaim, or setoff to any action for the unpaid balance owed under this Agreement or for possession brought by said holder. All rights of Lender hereunder shall inure to the benefit of its successors and assigns and any subsequent holder of the Note, and all Obligations of Borrower shall bind the heirs, executors, administrators, successors, and assigns of Borrower.

**7.08 Attorneys' Fees and Expenses.** Borrower agrees to pay all reasonable attorneys' fees and expenses, including recording and filing fees, incurred by Lender in connection with the financing being concluded this day as well as any fees and expenses of counsel, whether incurred before or after the Obligations are paid and performed in full, which Lender may hereafter incur in reasonably protecting, enforcing, increasing, or releasing any security held by Lender, and in foreclosing any mortgage and/or in sustaining the validity of any mortgage. Borrower specifically authorizes Lender to pay all such fees and expenses and charge the same to its loan account.

**7.09 Headings.** The descriptive headings of the several sections of this Agreement are inserted for convenience only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

**7.10 Severability.** If any provision of this Agreement or application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Agreement or the application of such provision to persons, entities, or circumstances other than those as to which it is held invalid, shall not be affected thereby and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

**7.11 Further Assurances.** Borrower shall execute and deliver to Lender all instruments and do such further acts and things as Lender may reasonably request which may be necessary or desirable to effect the purposes of this Agreement.

**7.12 Governing Law.** This Agreement shall be construed in accordance with, and governed by, the laws of the State of Florida.

**7.13 Jurisdiction. LENDER AND BORROWER AGREE THAT THIS AGREEMENT HAS BEEN NEGOTIATED AND FORMED IN THE STATE OF FLORIDA AND THE PERFORMANCE CONTEMPLATED HEREBY SHALL BE DEEMED TO BE PERFORMED IN THE STATE OF FLORIDA. LENDER AND BORROWER FURTHER AGREE THAT THE EXECUTION AND DELIVERY OF THIS AGREEMENT, AS WELL AS PERFORMANCE OF THE OBLIGATIONS REQUIRED HEREIN, CONSTITUTE THE TRANSACTION OF BUSINESS WITHIN THE STATE OF FLORIDA. BORROWER HEREBY APPOINTS THE FLORIDA SECRETARY OF STATE AS ITS ATTORNEY AND AGREES THAT ANY PROCESS IN ANY CASE OF CONTROVERSY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT MAY BE SERVED UPON THE FLORIDA SECRETARY OF STATE AND SHALL HAVE THE SAME VALIDITY AS IF SERVED UPON THE UNDERSIGNED PERSONALLY. LENDER AND BORROWER AGREE THAT ANY APPROPRIATE STATE OR FEDERAL DISTRICT COURT LOCATED IN THE STATE OF FLORIDA SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY CASE OR CONTROVERSY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT AND SHALL BE A PROPER FORUM IN WHICH TO ADJUDICATE SUCH CASE OR CONTROVERSY. LENDER AND BORROWER AGREE TO SUBMIT TO PERSONAL JURISDICTION IN THE STATE OF FLORIDA IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.**

**7.14 Amendments.** This Agreement may not be altered, amended, waived, or modified in any way whatsoever except by a writing duly executed by the party to be charged therewith.

**7.15 Entire Agreement.** This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof.

**IN WITNESS WHEREOF, Borrower has executed this Agreement as of January 17, 2020.**

**Signed, Sealed, and Delivered
in the Presence of:**

**BORROWER:**

Witness Name:_____

Joseph Severino

Witness Name:_____

**STATE OF** _FL_ )

**COUNTY OF** _Lake_ )

On January _14th_, 2020, before me, personally came Joseph Severino, who being by me duly sworn, did depose and say that he signed this instrument as his voluntary act and deed.

OFFICIAL SEAL
SUZANNE M. GERVAIS
Notary Public - State of Illinois
My Commission Expires Mar 14, 2023

NOTARY PUBLIC
COMMISSION #: _____

**Capital Funding Financial LLC**
**ISAOA/ATIMA**

Witness Name:_____

By:
Name:
Title: Authorized Signatory

Witness Name:_____

STATE OF _Florida_ )
COUNTY OF _Palm Beach_ )

I certify that on January ____, 2020, came before me in person and stated to my satisfaction that he/she:

(a)     made the attached instrument; and

(b)     was authorized to and did execute this instrument on behalf of and as
_____ of Capital Funding Financial LLC, a Florida limited liability company (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and members.



NOTARY PUBLIC
COMMISSION #: _____

CLAUDETTE D. WILLIAMS
Commission # GG 358451
Expires July 24, 2023
Bonded Thru Troy Fain Insurance 800-385-7019

## SCHEDULE A

### REPRESENTATIONS AND WARRANTIES
### WITH RESPECT TO PURCHASED MORTGAGE LOANS

**Borrower represents and warrants that:**

(a) **No Outstanding Charges.** Except for Permitted Encumbrances, as set forth on Schedule A of Lender's title policy, all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents, in each case, which may become a lien on the Mortgaged Property, which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet delinquent.

(b) **No Defenses.** The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note, the Mortgage or any other related Loan Document, or the exercise of any right thereunder, render either the Mortgage Note, the Mortgage or any other related Loan Document unenforceable, in whole or in part and no such right of rescission, set-off, counterclaim or defense has been asserted in writing with respect thereto, and no Mortgagor in respect of the Mortgage Loan was a debtor in any state or Federal bankruptcy or insolvency proceeding on the Closing Date of the Mortgage Loan.

(c) **Compliance with Applicable Laws.** Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have been complied with.

(d) **Location and Type of Mortgaged Property.** The Mortgaged Property consists of real property with a detached single-family residence erected thereon, or a two- to four-family dwelling, including condominium units. No portion of the related Mortgaged Property shall be used (i) for commercial purposes (other than the general rehabilitation of the Mortgaged Property by the Mortgagor in the ordinary course of the Mortgagor's business), (ii) as the Mortgagor's primary residence or in any other manner that would cause the Mortgaged Property to be considered an owner-occupied Mortgaged Property or (iii) for any other personal or household purposes.

(e) **Valid First Lien.** The Mortgage is a valid, subsisting, enforceable and perfected first priority lien and first priority security interest on the real property included in the Mortgaged Property, including all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing, subject only to Permitted Encumbrances as set forth in Schedule "B" of the Lender's title policy. Any security agreement, chattel mortgage or

equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable first lien and first priority security interest on the property described therein (subject to Permitted Encumbrances). The Mortgaged Property was not, as of the Closing Date of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien subordinate to the lien of the Mortgage.

(f) **Validity of Mortgage Documents.** The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor or guarantor, if applicable, in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of any Person, including, without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan. Seller or Seller's attorney has reviewed all of the documents constituting the Mortgage File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

(g) **Doing Business.** Borrower and all other parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (i) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (ii) to the extent required under the laws of such state, either (A) organized under the laws of such state, (B) qualified to do business in such state, (C) a federal savings and loan association, a savings bank or a national bank having a principal office in such state, or (D) not doing business in such state.

(h) **No Mechanics' Liens.** Except for Permitted Encumbrances, there are no mechanics' or similar liens or claims which have been filed for work, labor or material affecting the Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the Mortgage.

## COMMERCIAL PROMISSORY NOTE

**FOR VALUE RECEIVED**, the undersigned, **JOSEPH SEVERINO**, an individual, having an address at **721 Oriole Ave., Park Ridge, IL 60068** ("Maker"), promises to pay to the order of **CAPITAL FUNDING FINANCIAL LLC**, a Florida limited liability company at its principal place of business at **2234 N Federal Hwy #542, Boca Raton, FL 33431**, its successors and/or assignees as their interests may appear ("Lender"), or at such other place as the holder hereof may designate, the principal amount of **Seven Hundred Fifteen Thousand and 00/100 Dollars ($715,000.00)**, with interest on the principal amount of this Note computed from the date hereof, together with all taxes assessed upon this Note and together with any costs, expenses, and reasonable attorneys' fees incurred in the collection of this Note or in protecting, maintaining, or enforcing its security interest or any mortgage securing this Note or upon any litigation or controversy affecting this Note or the security given therefor, including, without limitation, proceedings under the Federal Bankruptcy Code.

1. **Payments.** Principal and interest hereunder shall be payable as follows:

    A.      From the date hereof, interest on the principal amount of this Note shall accrue at the rate of **9.99%** per annum, for the period from the date hereof to and including **January 17, 2021** shall be payable at the closing of the loan.

    B.      The rate of interest of this Note, which shall remain effective until an Event of Default (as defined below), shall be fixed at **9.99%** per annum.  Interest on this Note shall be computed on the basis of a **three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months**.

    C.      Beginning on **March 1, 2020** and continuing on the **1st day** of each and every month thereafter through and including the payment due on **January 1, 2021** (as hereinafter defined), Maker shall make payments of interest only, each in the amount of **Five Thousand Nine Hundred Fifty-two and 38/100 Dollars ($5,952.38)**, in arrears, on the principal amount of this Note.

    D.      If not sooner paid, the entire principal amount of this Note, together with accrued interest and with all other sums due hereunder, shall be due and payable in full on **January 17, 2021 (the "Maturity Date")**. It is understood and agreed by Maker that if sufficient prepayments of principal have not been made, a balloon payment will be due on the Maturity Date.

    E.      All payments received will be credited first to late charges and costs hereunder, then to interest accrued at the applicable interest rate hereinafter set forth, with the balance on account of principal.

F.     At no time shall the interest rate exceed the maximum rate permitted by the usury statutes governing this Note, if any. If, by application of the above interest rate formula, the interest rate would exceed and violate such usury statutes, interest shall accrue at the maximum rate permitted by law.

**2.     Security.** This Note is secured by a first priority Commercial Mortgage, Security Agreement, and Fixture Filing (the "Mortgage") on that certain piece or parcel of real property known as **1392 West Old Mill Road, Lake Forest, IL 60045,** being more specifically described in said Mortgage.

**3.     Default.** If any of the following events occur (which is an "Event of Default"), Lender may declare the entire outstanding principal balance hereof, together with any other amounts that Maker owes to Lender, to be immediately due and payable:

a.  Maker fails to pay any installment of principal and/or interest or any other charges due under this Note within ten (10) calendar days after the same becomes due and payable;

b.  Maker defaults in any other obligations, liabilities, or indebtedness with Lender (whether now existing or hereafter arising);

c.  Maker sells, leases, or otherwise disposes of all or substantially all of its property, assets, or business, or if Maker ceases any of its business operations, dissolves, or commences reorganization;

d.  Makers makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets;

e.  Makers files or becomes the subject of a petition in Bankruptcy or upon the commencement of any proceeding or action under any Bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Maker, provided, however, that Maker shall have sixty (60) days from the filing of any involuntary petition in Bankruptcy to have the same discharged and dismissed;

f.  Upon the failure by Maker to observe or perform, or upon default in, any covenants, agreements, or provisions in the Mortgage, Loan Agreement or in any other instrument, document, or agreement, executed and/or delivered in connection herewith or therewith;

g.  Any representation or statement made herein or any other representation or statement made or furnished to Lender by Maker was materially incorrect or misleading at the time it was made or furnished;

h. In the event of any material adverse change in the financial condition of Maker.

**4.** **Default Rate.** After the occurrence of an Event of Default, interest will accrue at the lesser of (i) 18% per annum or (ii) the Maximum Rate (as defined in Section 15 below) allowed by applicable law. Interest will continue to accrue at the default rate after judgment until the Note is paid in full.

**5.** **Prepayment.** Provided that Maker is not in default hereunder, Maker may prepay all or any portion of the unpaid principal balance of this Note at any time. If Prepayment is made during the **five (5) months of the First Payment Date**, a prepayment premium up to **$29,761.90** reduced by any monthly interest payment previously received (the "Prepayment Premium"). Notwithstanding the foregoing, no Prepayment Premium shall be payable on a prepayment that is required to be made as a result of a casualty to or the taking by eminent domain of the subject property. All prepayment shall be applied first to any costs or charges due hereunder, then to interest due and owing hereunder, and then to principal then outstanding, in inverse order of maturity.

**6.** **Payments Past Maturity.** Maker hereby authorizes Lender, at Lender's sole discretion, to instruct Lender's servicer or sub servicer to continue accepting payments from Maker past the then original Maturity Date of this Note at the original terms stated herein and in the other Loan Documents. Maker hereby authorizes Lender and its servicer and sub servicer to either (i) initiate, and/or continue the initiation of, ACH direct debit transactions from Maker's bank account supplied to Lender or its servicer or sub servicer; and/or (ii) otherwise accept monthly payments due and owing on this Note in the form of paper checks or as otherwise agreed by and between Maker and Lender's servicer or sub servicer. If the then original Maturity Date of this Note has passed, the continued acceptance of payments by Lender shall be at the sole and absolute discretion of Lender, and Lender shall not be obligated to accept such payments. Lender reserves the right to cease or discontinue acceptance of any such payments from Maker at any time and to pursue all of its available remedies under this Note and the other Loan Documents.

**7.** **Late Charge.** It is further agreed that the holder hereof may collect a late charge equal to ten percent (10%) or One Hundred and 00/100 Dollars, whichever is greater, of any payment required hereunder, including the final payment, or required under any security agreement, mortgage, or any other instrument, document, or agreement executed and/or delivered in connection herewith which is not paid within ten (10) calendar days of the due date thereof in addition to any bank fees/charge back fees incurred by the holder. This late charge is to cover the extra expenses involved in handling delinquent payments and is not to be construed to cover other costs and attorneys' fees incurred in any action to collect this Note or to foreclose the mortgage securing the same. This provision shall not affect or limit the holder's rights or remedies with respect to any Event of Default.

8. **Lien/Set Off.** Maker hereby gives the holder hereof a lien and right of set off for all of Maker's liabilities to the holder hereof or Lender upon and against all deposits, credits, and other property of Maker now or hereafter in the possession or control of the holder hereof, or in transit to it, excepting however, funds held in trust by Maker. All payments shall be made in lawful currency of the United States of America in immediately available funds, without abatement, counterclaim, or set-off, and free and clear of, and without any deduction or withholding for, any taxes or other matters.

9. **Purpose of Loan.** Maker represents and warrants that the proceeds of this Note are to be <u>used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Maker acknowledges that Lender is making this loan to Maker in reliance upon the above representation by Maker.</u> The above representation by Maker will survive the closing of this loan and repayment of amounts due to Lender hereunder.

10. **Other Obligations.** To the extent that the outstanding balance of this Note is reduced or paid in full by reason of any payment to Lender by an accommodation maker, endorser, or guarantor, and all or any part of such payment is rescinded, avoided, or recovered from Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy, or reorganization of the accommodation maker, endorser, or guarantor, the amount of such rescinded, avoided, or returned payment shall be added to or, in the event this Note has been previously paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the outstanding balance of this Note and all terms and provisions herein shall thereafter apply to the same.

11. **WAIVER. MAKER (AND EACH AND EVERY ENDORSER, GUARANTOR, AND SURETY OF THIS NOTE) ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES THE RIGHT TO NOTICE AND HEARING UNDER FLORIDA GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, AND FURTHER WAIVES DILIGENCE, DEMAND, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST AND NOTICE OF PROTEST AND NOTICE OF ANY RENEWALS OR EXTENSIONS OF THIS NOTE, AND ALL RIGHTS UNDER ANY STATUTE OF LIMITATIONS, AND AGREES THAT THE TIME FOR PAYMENT OF THIS NOTE MAY BE CHANGED AND EXTENDED AS PROVIDED IN SAID MORTGAGE OR ANY SECURITY AGREEMENT, WITHOUT IMPAIRING MAKER'S LIABILITY THEREON, AND FURTHER CONSENTS TO THE RELEASE OF ALL OR ANY PART OF THE SECURITY FOR THE PAYMENT HEREOF, OR THE RELEASE OF ANY PARTY LIABLE FOR THIS OBLIGATION WITHOUT AFFECTING THE LIABILITY OF THE OTHER PARTIES HERETO. ANY DELAY ON THE PART**

OF THE HOLDER HEREOF IN EXERCISING ANY RIGHT HEREUNDER SHALL NOT
OPERATE AS A WAIVER OF ANY SUCH RIGHT, AND ANY WAIVER GRANTED FOR
ONE OCCASION SHALL NOT OPERATE AS A WAIVER IN THE EVENT OF ANY
SUBSEQUENT DEFAULT. MAKER FURTHER WAIVES TRIAL BY JURY AND
ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY,
AND ONLY AFTER CONSIDERATION OF THE RAMIFICATIONS OF THE WAIVER
BY ITS ATTORNEY.

12.    **Binding Effect.** This Note shall be binding on Maker, its successors and
assigns and shall inure to the benefit of Lender, any holder hereof, its successors and
assigns.

13.    **Governing Law.** This Note shall be governed by, and construed in
accordance with, the laws of the Florida, without reference to conflicts of laws
principles thereof.

14.    **Joint and Several.** Should this Note be signed by more than one Maker,
references in this Note to Maker in the singular shall include the plural and all
obligations herein contained shall be joint and several of each signer hereof.

15.    **Maximum Rate.** Notwithstanding anything to the contrary contained
herein, under no circumstances shall the aggregate amount paid or agreed to be
paid hereunder exceed the highest lawful rate permitted under applicable usury law
(the "Maximum Rate") and the payment obligations of Maker under this Note are
hereby limited accordingly.  If under any circumstances, whether by reason of
advancement or acceleration of the maturity of the unpaid principal balance hereof
or otherwise, the aggregate amounts paid on this Note shall include amounts which
by law are deemed interest and which would exceed the Maximum Rate, Maker
stipulates that payment and collection of such excess amounts shall have been and
will be deemed to have been the result of a mistake on the part of both Maker and
the holder of this Note, and the party receiving such excess payments shall promptly
credit such excess (to the extent only of such payments in excess of the Maximum
Rate) against the unpaid principal balance hereof and any portion of such excess
payments not capable of being so credited shall be refunded to Maker.

16.    **Rights Cumulative.** The rights and remedies of Lender shall be cumulative
and not in the alternative, and shall include all rights and remedies granted herein,
in any document referred to herein or executed and/or delivered in connection
herewith, and under all applicable laws, and the exercise of any one or more of them
will not be a waiver of any other.

17.    **Severability.** If any term, clause, or provision hereof shall be adjudged to be
invalid or unenforceable by a court of appropriate jurisdiction, the validity and
enforceability of the remainder shall not affected thereby and each such term,
clause, or provision shall be valid and enforceable to the fullest extent permitted by
law.

IN WITNESS WHEREOF, Maker has executed this Commercial Promissory Note as of the January 17, 2020.

Signed, Sealed, and Delivered
in the Presence of:

MAKER:

_____
Joseph Severino

_____
Witness Name:_____

_____
Witness Name:_____

STATE OF __Il__ )

COUNTY OF __Lake__ )

On January 17th, 2020, before me, personally came Joseph Severino, who being by me duly sworn, did depose and say that he signed this instrument as his voluntary act and deed.

OFFICIAL SEAL
SUZANNE M. GERVAIS
Notary Public - State of Illinois
My Commission Expires Mar 14, 2023

_____
NOTARY PUBLIC
COMMISSION #: _____

Greater Illinois Title Co.
300 E. Roosevelt Road
Wheaton, IL 60187

GIT File #: 71003783g (2/3)

Image# 059009760028 Type: MTG
Recorded: 01/28/2020 at 02:48:42 PM
Receipt#: 2020-00005307
Page 1 of 28
Fees: $60.00
IL Rental Housing Fund: $9.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder

File **7628831**

# RECORDING COVER SHEET

## Lake County

TYPE OF DOCUMENT: Mortgage

*Prepared by &*
**After Recording Return to:**
**CAPITAL FUNDING FINANCIAL LLC**
**2234 N FEDERAL HWY #542**
**BOCA RATON, FL 33431**

## COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING

      **KNOW ALL MEN BY THESE PRESENTS** that, **JOSEPH SEVERINO**, an individual, having an address of **721 Oriole Ave., Park Ridge, IL 60068** ("Mortgagor" or "Borrower", as the case maybe), for the consideration of **SEVEN HUNDRED FIFTEEN THOUSAND and 00/100 DOLLARS ($715,000.00)** and other good and valuable consideration, received to its full satisfaction from **CAPITAL FUNDING FINANCIAL LLC**, a Florida limited liability company, having its principal place of business at **2234 N Federal Hwy #542, Boca Raton, FL 33431** ("Mortgagee" or "Lender", as the case maybe) does hereby give, grant, bargain, sell, and confirm unto the said Mortgagee, its successors and assigns forever, the following:

(A)    All right, title and interest in and to those premises more commonly known as **1392 West Old Mill Rd., Lake Forest, IL 60045 (the "Property")** which is more particularly described in **SCHEDULE A (the "Premises")**, which is attached hereto and made a part hereof;

(B)    **TOGETHER WITH** (1) all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Premises, and (2) all building materials, supplies and other property stored at or delivered to the Premises or any other location for incorporation into the improvements located or to be located on the Premises, and all fixtures, machinery, appliances, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by Mortgagor and located in or on, or attached to, and used or intended to be used in connection with, or with the operation of, or the occupancy of, the Premises, buildings, structures or other improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by Mortgagor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and all of the right, title and interest of Mortgagor in and to such personal property which, to the fullest extent permitted by law, shall be conclusively deemed fixtures and a part of the real property encumbered hereby **(the "Improvements")**;

(C)    **TOGETHER WITH** (1) all estate, right, title and interest of Mortgagor, of whatever character, whether now owned or hereafter acquired, in and to (a) all streets, roads and public places, open or proposed, in front of or adjoining the Premises, and the land lying in the bed of such streets, roads and public places, and (b) all other sidewalks, alleys, ways, passages, strips and gores of land adjoining or used or intended to be used in connection with any of the property described in paragraphs (A) and (B) hereof, or any part thereof; and (2) all water courses, water

Page 1 of 27

File Number: 7628831   Page 2 of 28
Order: QuickView_               Page 2 of 28       Requested By: , Printed: 4/14/2020 2:32 PM
Doc: 2020-7628831 REC ALL

rights, easements, rights-of-way and rights of use or passage, public or private, and all estates, interest, benefits, powers, rights (including, without limitation, any and all lateral support, drainage, slope, sewer, water, air, mineral, oil, gas and subsurface rights), privileges, licenses, profits, rents, royalties, tenements, hereditaments, reversions and sub reversions, remainders and sub remainders and appurtenances whatsoever in any way belonging, relating or appertaining to any of the property described in paragraphs (A) and (B) hereof, or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor; and

(D) **TOGETHER WITH** (a) all estate, right, title and interest of Mortgagor of, in and to all judgments, insurance proceeds, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the property described in paragraphs (A), (B) and (C) hereof or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the property described in paragraphs (A), (B) or (C) hereof or any part thereof, or to any rights appurtenant thereto, and all proceeds of any sales or other dispositions of the property described in paragraphs (A), (B) or (C) hereof, or any part thereof; and Mortgagee is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquitances therefor, and (if it so elects) to apply the same, after deducting therefrom any expenses incurred by Mortgagee in the collection and handling thereof, toward the payment of the indebtedness and other sums secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable; and (b) all contract rights, general intangibles, governmental permits, licenses and approvals, actions and rights in action, including without limitation all rights to insurance proceeds and unearned premiums, arising from or relating to the property described in paragraphs (A), (B) and (C) above; and (c) all proceeds, products, replacements additions, substitutions, renewals and accessions of and to the property described in paragraphs (A), (B) and (C).  All of the property described in paragraphs (A), (B), (C) and (D) above, and each item of property therein described, is herein referred to as the "Mortgaged Property".

**TO HAVE AND TO HOLD** the above granted and bargained Premises, with the appurtenances thereof, unto it, the said Mortgagee, its successors and assigns forever, to it and their own proper use and behoof. And also, the said Mortgagor does for itself, its successors and assigns, covenant with the said Mortgagee, its successors and assigns, that at and until the ensealing of these presents, they are well seized of the Premises as a good indefeasible estate in FEE SIMPLE; and have good right to bargain and sell the same in manner and form as is above written; and that the same is free and clear of all encumbrances whatsoever except as set forth on Schedule "B", attached hereto..

**AND FURTHERMORE**, Mortgagor does by these presents bind itself, its legal representatives and its successors and assigns forever to WARRANT AND DEFEND

the above granted and bargained Mortgaged Property to Mortgagee, its successors and assigns, against all claims and demands whatsoever.

### THE CONDITION OF THIS MORTGAGE IS SUCH THAT:

**WHEREAS**, Mortgagor is indebted to Mortgagee by virtue of a commercial loan transaction (the "Loan") in the sum of SEVEN HUNDRED FIFTEEN THOUSAND and 00/100 DOLLARS ($715,000.00), as evidenced by (1) a certain Commercial Promissory Note in the principal amount of SEVEN HUNDRED FIFTEEN THOUSAND and 00/100 DOLLARS ($715,000.00) (as same may be amended, restated, or modified from time to time, the "Note") dated the 17TH day of January, 2020, executed by Mortgagor and delivered to Mortgagee, with all amounts remaining unpaid thereon being finally due and payable on January 17, 2021 and (2) that certain Loan Agreement (as same may be amended, restated, or modified from time to time, "Loan Agreement") of even date herewith;

**WHEREAS**, the terms and repayment of such obligations of the Mortgagor are set forth in the Note;

**WHEREAS**, to secure payment and performance of the indebtedness and obligations represented by the Note, the Mortgagor is hereby executing this Mortgage in favor of the Mortgagee;

**WHEREAS**, Mortgagee has agreed to provide financing for the purchase/refinance and/or renovations of the premises located at: 1392 West Old Mill Rd., Lake Forest, IL 60045; and

**WHEREAS**, at closing, the Mortgagee initially advanced the sum of SEVEN HUNDRED FIFTEEN THOUSAND and 00/100 DOLLARS ($715,000.00) to Mortgagor on the date hereof and may make further advances in the lenders absolute and sole discretion; and

**WHEREAS**, buildings and/or improvements on the Mortgaged Property are in the process of construction or repair, or are to be constructed, erected or repaired; and

**WHEREAS**, Mortgagor represents and warrants that it has full power and authority to execute and deliver the Note, this Mortgage, and all other documents, agreements and instruments required of it by Mortgagee in connection with the making of the Loan (the Note, this Mortgage, and all such other documents, agreements and instruments executed and delivered by Mortgagor in connection with the Loan being sometimes collectively referred to herein as the "Loan Documents").

**NOW, THEREFORE**, Mortgagor hereby covenants and agrees with Mortgagee as follows:

## ARTICLE ONE: COVENANTS OF MORTGAGOR

### 1.01 Performance of Loan Documents.

Mortgagor shall cause to be performed, observed and complied with all provisions hereof, of the Note and each of the Loan Documents, and will promptly pay to Mortgagee the principal, with interest thereon, and all other sums required to be paid by Mortgagor under the Note and pursuant to the provisions of this Mortgage and of the Loan Documents when payment shall become due (the entire principal amount of the Note, all accrued interest thereon and all obligations and indebtedness thereunder and hereunder and under all of the Loan Documents described being referred to herein as the "Indebtedness").

### 1.02 General Representations, Covenants and Warranties.

Mortgagor represents and covenants that (a) Mortgagor is now able to meet its debts as they mature, the fair market value of its assets exceeds its liabilities and no bankruptcy or insolvency case or proceeding is pending or contemplated by or against Mortgagor; (b) all reports, statements and other data furnished by Mortgagor to Mortgagee in connection with the Loan are true, correct and complete in all material respects and do not omit to state any fact or circumstance necessary to make the statements contained therein not misleading; (c) this Mortgage, the Note and all other Loan Documents are legal, valid and binding obligations of Mortgagor enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contract or agreement to which Mortgagor is a party or by which Mortgagor may be bound and do not contravene any law, order, decree, rule or regulation to which Mortgagor is subject; (d) there are no actions, suits or proceedings pending, or to the knowledge of Mortgagor threatened, against or affecting Mortgagor or any part of the Mortgaged Property; (e) all costs arising from construction of any improvements and the purchase of all equipment located on the Mortgaged Property which have been incurred prior to the date of this Mortgage have been paid; (f) the Mortgaged Property has frontage on, and direct access for, ingress and egress to the street(s) described in any survey submitted to Mortgagee; (g) electric, sewer, water facilities and any other necessary utilities are, or will be, available in sufficient capacity to service the Mortgaged Property satisfactorily during the term of the Note, and any easements necessary to the furnishing of such utility service by Mortgagor have been or will be obtained and duly recorded (evidence satisfactory to Mortgagee that all utility services required for the use, occupancy and operations of the Mortgaged Property shall be provided to Mortgagee immediately upon Mortgagee's request); (h) there has not been, is not presently and will not in the future be any activity conducted by Mortgagor or any tenant at or upon any part of the Mortgaged Property that has given or will give rise to the imposition of a lien on any part of the Mortgaged Property; (i) Mortgagor is not in default under the terms of any instrument evidencing or securing any indebtedness of Mortgagor, and there has occurred no event which would, if uncured or uncorrected, constitute a default under any such instrument with the giving of notice, or the passage of time or both; and (j) Mortgagee has legal capacity

Page 4 of 27

to enter into the Loan and to execute and deliver the Loan Documents, and the Loan Documents have been duly and properly executed on behalf of Mortgagee.

**1.03 Compliance with Laws; Permits; Notice.**
Mortgagor covenants and warrants that the Mortgaged Property presently complies with and shall continue to comply with all applicable restrictive covenants, applicable zoning, wetlands and subdivision ordinances and building codes, all applicable health and environmental laws and regulations and all other applicable laws, statutes, rules, ordinances, codes, and regulations, and Mortgagor has not received any notice that the Mortgaged Property is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations. If Mortgagor receives notice from any federal, state or other governmental body that it is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations, Mortgagor shall provide Mortgagee with a copy of such notice promptly. Mortgagor agrees to comply with all federal, state and municipal local laws, statutes, rules, ordinances, codes and regulations in connection with the construction and development of the Mortgaged Property. Mortgagor has obtained all licenses, permits, authorizations, consents and approvals necessary for the construction and development of the Mortgaged Property, and all such licenses, permits, authorizations, consents and approvals are in full force and effect and all appeal periods have expired. Unless required by applicable law or unless Mortgagee has otherwise agreed in writing, Mortgagor shall not allow changes in the nature of the occupancy for which the Premises were intended at the time this Mortgage was executed. Mortgagor shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Mortgagee's prior written consent. Mortgagor warrants and represents that its use, and the use by any of its tenants, of the Mortgaged Property is in accordance and compliance with the terms and conditions of any and all rules, regulations, and laws that may be applicable to the Mortgaged Property, including, without limitation, all federal, state and local laws, ordinances, rules and regulations regarding hazardous and toxic materials and that Mortgagor shall maintain and continue such compliance and shall require and ensure its tenants' compliance with the same. Mortgagor shall maintain or shall cause their agent to maintain in its possession, available for the inspection of the Mortgagee, and shall deliver to the Mortgagee, upon three (3) business days' request, evidence of compliance with all such requirements. Mortgagor hereby indemnifies and holds Mortgagee free of and harmless from and against any and all claims, demands, damages or liabilities that Mortgagee may incur with regard thereto.

**1.04 Taxes and Other Charges.**

**1.04.1 Impositions.** Subject to the provisions of this Section 1.04, Mortgagor shall pay, at least five (5) days before the date due, all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of

Page 5 of 27

every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which shall be assessed, levied, confirmed, imposed or become a lien upon or against the Mortgaged Property or any part thereof, or which shall become payable with respect thereto. Mortgagor shall deliver to Mortgagee, within twenty (20) days after the due date of each payment in connection with the Impositions or any assessment for local improvements ("Assessment"), the original or a true Photostatic copy of the official receipt evidencing such payment or other proof of payment satisfactory to Mortgagee.

**1.04.2 Insurance.**
(a) Mortgagor shall keep all buildings erected on or to be erected on the Mortgaged Property insured against loss by fire and such other hazards as the Mortgagee may require and Mortgagor shall obtain and maintain insurance with respect to other insurable risks and coverage relating to the Mortgaged Property including, without limitation, fire, builder's risk, worker's compensation, physical damages, loss of rentals or business interruption, earthquake (if applicable), and liability insurance, all such insurance to be in such sums and upon such terms and conditions as Mortgagee reasonably may require, with loss proceeds by the terms of such policies made payable to the Mortgagee as its interest may appear. Mortgagor covenants that all insurance premiums shall be paid not later than fifteen (15) days prior to the date on which such policy could be cancelled for non-payment. If, to Mortgagor's knowledge, any portion of the Mortgaged Property is in an area identified by any federal governmental authority as having special flood hazards, and flood insurance is available, a flood insurance policy meeting the current guidelines of FEMA's Federal Insurance and Mitigation Administration is in effect with a generally acceptable insurance carrier, in an amount representing coverage not less than the least of (1) the outstanding principal balance of the Loan, (2) the full insurable value of the Mortgaged Property, and (3) the maximum amount of insurance available under the Flood Disaster Protection Act of 1973, as amended. All such insurance policies (collectively, the "hazard insurance policy") shall contain a standard mortgagee clause naming the Mortgagee and its successors and assigns as beneficiary, and may not be reduced, terminated, or canceled without thirty (30) days' prior written notice to the Mortgagee.
(b) Such insurance companies shall be duly qualified as such under the laws of the states in which the Mortgaged Property is located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, and companies whose claims paying ability is rated in the two highest rating categories by A.M. Best with respect to hazard and flood insurance. Such insurance shall be in amounts not less than the greater of: (i) the outstanding principal balance of the Loan, or (ii) the amount necessary to avoid the operation of any co-insurance provisions with respect to the Premises.
(c) All such policies shall provide for a minimum of thirty (30) days prior written cancellation notice to Mortgagee. Mortgagee, upon its request to Mortgagor, shall have the custody of all such policies and all other policies which may be procured insuring said Mortgaged Property, the same to be delivered, to Mortgagee at its office and all renewal policies to be delivered and premiums paid to Mortgagee at

Page 6 of 27

its office at least twenty (20) days before the expiration of the old policies; and Mortgagor agrees that upon failure to maintain the insurance as above stipulated or to deliver said renewal policies as aforesaid, or to pay the premiums therefor, Mortgagee may, without obligation to do so, procure such insurance and pay the premiums therefor and all sums so expended shall immediately be paid by Mortgagor and unless so paid, shall be deemed part of the debt secured hereby and shall bear interest at the rate set forth in the Note, and thereupon the entire principal sum unpaid, including such sums as have been paid for premiums of insurance as aforesaid, and any and all other sums which shall be payable hereunder shall become due and payable forthwith at the option of Mortgagee, anything herein contained to the contrary notwithstanding. In case of loss and payment by any insurance company, the amount of insurance money received shall be applied either to the Indebtedness secured hereby, or in rebuilding and restoring the damaged property, as Mortgagee may elect.

(d) Mortgagor has not engaged in and shall not engage in any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including, without limitation, no unlawful fee, commission, kickback, or other unlawful compensation or value of any kind has been or will be received, retained, or realized by any attorney, firm, or other person, and no such unlawful items have been received, retained, or realized by Mortgagor.

(e) No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy or bankruptcy bond, irrespective of the cause of such failure of coverage.

### 1.04.3 Deposits for Impositions and Insurance.

Notwithstanding anything to the contrary contained in any of the Loan Documents, upon demand by Mortgagee, after failure by Mortgagor to pay any of the amounts specified in Sections 1.04.1 or 1.04.2, Mortgagor shall deposit with Mortgagee on the first day of each month an amount equal to one twelfth (1/12th) of the sum of: (i) the aggregate annual payments for the Impositions; (ii) the annual insurance premiums on the policies of insurance required to be obtained and kept in force by Mortgagor under this Mortgage; and (iii) all other periodic charges (other than interest and principal under the Note) arising out of the ownership of the Mortgaged Property or any portion thereof which are or with notice or the passage of time or both will become a lien against the Mortgaged Property or any part thereof ((i), (ii), and (iii), collectively, the "Annual Payments"). Such sums will not bear interest and are subject to adjustment or additional payments in order to assure Mortgagee that it will have the full amount of any payment on hand at least one (1) month prior to its due date. Mortgagee shall hold said sums in escrow to pay said Annual Payments in the manner and to the extent permitted by law when the same become due and payable. Notwithstanding anything herein to the contrary, however, such deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Mortgagee. If the total payments made by Mortgagor to Mortgagee, on account of said Annual Payments up to the time when the same become due and

payable, shall exceed the amount of payment for said Annual Payments actually made by Mortgagee, such excess shall be credited by Mortgagee against the next payment or payments due from Mortgagor to Mortgagee on account of said Annual Payments. If, however, said payments made by Mortgagor shall not be sufficient to pay said Annual Payments when the same become due and payable, Mortgagor agrees to promptly pay to Mortgagee the amount necessary to make up any deficiency. In case of default in the performance of any of the agreements or provisions contained in the Note, Mortgagee may, at its option, at any time after such default, apply the balance remaining of the sums accumulated, as a credit against the principal or interest of the mortgage Indebtedness, or both.

### 1.04.4 Late Charge.
Mortgagee may collect a "late charge" of ten percent (10%) or One Hundred and 00/100 Dollars ($100.00), whichever is greater, on any payment or installment due or required to be paid pursuant to the terms of this Mortgage or the Note which is not paid within ten (10) days of when the same is required to be paid to cover the extra expenses involved in handling such delinquent payment. Any bank service fee, insufficient funds fee or returned check fee incurred will be due.

### 1.04.5 Proof of Payment.
Upon request of Mortgagee, Mortgagor shall deliver to Mortgagee, within twenty (20) days after the due date of any payment required in this Section 1.04, proof of payment satisfactory to Mortgagee.

### 1.05 Condemnation.
Mortgagee shall be entitled to all compensation awards, damages, claims, rights of action and proceeds of, or on account of, any damage or taking through condemnation, eminent domain or the like, and Mortgagee is hereby authorized, at its option, to commence, appear in and prosecute in its own or Mortgagor's name any action or proceeding relating to any such condemnation, taking or the like and to settle or compromise any claim in connection therewith.

### 1.06 Care of Mortgaged Property; Demolition and Alteration.
Mortgagor shall maintain the Mortgaged Property in good condition and repair, shall not commit or suffer any waste of the Mortgaged Property, and shall comply with or cause to be complied with, all statutes, laws, rules, ordinances and requirements of any governmental authority relating to the Mortgaged Property; and Mortgagor shall promptly repair, restore, replace or rebuild any part of the Mortgaged Property now or hereafter subject to the lien of this Mortgage which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to in Section 1.05. Mortgagor shall complete and pay for, within a reasonable time, any structure in the process of construction on the Mortgaged Property at any time during the term of the Loan; and Mortgagor shall not initiate, join in, or consent to any change in any private restrictive covenants, or private restrictions, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof, without the written

Page 8 of 27