consent of Mortgagee. Mortgagor agrees that no building or other property now or hereafter covered by the lien of this Mortgage shall be removed, demolished, or materially altered, without the prior written consent of Mortgagee, except that Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien of this Mortgage, such equipment as from time to time may become worn out or obsolete, provided that simultaneously with or prior to such removal any such equipment shall be replaced with other equipment of value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance, and by such removal and replacement Mortgagor shall be deemed to have subjected such equipment to the lien of this Mortgage.

**1.07  Transfer and Encumbrance of Mortgaged Property.**
(a) Mortgagor shall not sell, convey, transfer, suffer any type of change in title or ownership, lease, assign or further encumber any interest in any part of the Mortgaged Property, without the prior written consent of Mortgagee, Any such sale, conveyance, transfer, pledge, lease, assignment or encumbrance made without Mortgagee's prior written consent shall be null and void and shall constitute a default hereunder. Mortgagor shall not, without the prior written consent of Mortgagee, permit any further assignment of the rents, royalties, issues, revenues, income, profits or other benefits from the Mortgaged Property, or any part thereof, and any such assignment without the prior written consent of Mortgagee shall be null and void and shall constitute a default hereunder. Mortgagor agrees that in the event the ownership of the Mortgaged Property or any part thereof is permitted by Mortgagee to be vested in a person other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal in any way with such successor or successors in interest with reference to this Mortgage and the Note and other sums hereby secured without in any way vitiating or discharging Mortgagor's liability hereunder or upon the Note and other sums hereby secured. No sale of the Mortgaged Property and no forbearance to any person with respect to this Mortgage and no extension to any person of the time for payment of the Note and other sums hereby secured given by Mortgagee shall operate to release, discharge, modify, change or affect the original liability of Mortgagor either in whole or in part.
(b) If Mortgagor shall sell, convey, assign or transfer all or any part of the Mortgaged Property or any interest therein or any beneficial interest in Mortgagor without Mortgagee's prior written consent, Mortgagee may, at Mortgagee's option, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner on the Indebtedness, declare the Indebtedness to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment, lease or transfer, and upon such declaration the entire unpaid balance of the Indebtedness shall be immediately due and payable.
(c) Mortgagor shall keep the Mortgaged Property free from mechanics' liens, materialmen's liens and encumbrances. If any prohibited lien or encumbrance is filed against the Mortgaged Property, Mortgagor shall cause the same to be removed and discharged of record within thirty (30) days after the date of filing thereof.

Page 9 of 27

(d) Mortgagor shall obtain, upon request by Mortgagee, from all persons hereafter having or acquiring any interest in or encumbrance on the Mortgaged Property or the said equipment or accessions, a writing duly acknowledged, and stating the nature and extent of such interest or encumbrance and that the same is subordinate to this Mortgage and no offsets or defenses exist in favor thereof against this Mortgage or the Note hereby secured, and deliver such writing to Mortgagee.

**1.08 Further Assurances.**
At any time and from time to time upon Mortgagee's request, Mortgagor shall make, execute and deliver, or cause to be made, executed and delivered, to Mortgagee and, where appropriate, shall cause to be recorded or filed, and from time to time thereafter to be re-recorded and refiled, at such time and in such offices and places as shall be deemed desirable by Mortgagee, any and all such further mortgages, instruments of further assurance, certificates and such other documents as Mortgagee may consider necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve, the obligations of Mortgagor under the Note and this Mortgage, the lien of this Mortgage as a lien upon all of the Mortgaged Property, and unto all and every person or persons deriving any estate, right, title or interest under this Mortgage. Upon any failure by Mortgagor to do so, Mortgagee may make, execute, record, file, re-record or refile any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor, and Mortgagor hereby irrevocably appoints Mortgagee the agent and attorney-in-fact of Mortgagor to do so.

**1.09 Uniform Commercial Code Security Agreement and Fixture Filing.**
This Mortgage is intended to be a security agreement and fixture filing which is to be filed for record in the real estate records pursuant to the Uniform Commercial Code in effect from time to time in the State of **ILLINOIS** for any of the goods specified above in this Mortgage as part of the Mortgaged Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code and Mortgagor hereby agrees to execute and deliver any additional financing statements covering said goods from time to time and in such form as Mortgagee may require to perfect a security interest with respect to said goods. Mortgagor shall pay all costs of filing such financing statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements which Mortgagee may reasonably require. Without the prior written consent of Mortgagee, Mortgagor shall not create or suffer to be created, pursuant to the Uniform Commercial Code, any other security interest in said goods, including replacements and additions thereto. Upon Mortgagor's breach of any covenant or agreement of Mortgagor contained in this Mortgage, including the covenants to pay when due all sums secured by this Mortgage, Mortgagee shall have the remedies of a secured party under the Uniform Commercial Code and, at Mortgagee's option, may also invoke the remedies permitted by applicable law as to such goods.

AS IT IS RELATED HERETO:

MORTGAGOR IS:          Joseph Severino
                       721 Oriole Ave.
                       Park Ridge, IL 60068


SECURED PARTY IS:      Capital Funding Financial LLC
                       ISAOA/ATIMA
                       2234 N Federal Hwy #542
                       Boca Raton, FL 33431

Mortgagor represents, covenants, and warrants that as of the date hereof as follows:
Mortgagor's full, correct, and exact legal name is set forth immediately above in this
Section 1.09. Mortgagor is an organization of the type and is incorporated in,
organized, or formed under the laws of the state specified in the introductory
paragraph to this Mortgage. In the event of any change in name or identity of
Mortgagor, Mortgagor hereby authorizes Mortgagee to file such Uniform
Commercial Code forms as are necessary to maintain the priority of Mortgagee's lien
upon the Mortgaged Property which may be deemed personal property or fixtures,
including future replacement thereof, which serves as collateral under this
Mortgage.

### 1.10 Lease Covenants.
Each and every covenant on the part of Mortgagor contained in any assignment of
lessor's interest in leases or any assignment of rents, royalties, issues, revenues,
profits, income or other benefits made collateral hereto is made an obligation of
Mortgagor hereunder as if fully set forth herein.

### 1.11 After-Acquired Property.
To the extent permitted by and subject to applicable law, the lien of this Mortgage
will automatically attach, without further act, to all after-acquired property located
in, on, or attached to, or used, or intended to be used, in connection with, or with the
renovation of, the Mortgaged Property or any part thereof; provided, however, that,
upon request of Mortgagee, Mortgagor shall execute and deliver such instrument or
instruments as shall reasonably be requested by Mortgagee to confirm such lien,
and Mortgagor hereby appoints Mortgagee its attorney-in-fact to execute all such
instruments, which power is coupled with an interest and is irrevocable.

### 1.12 Expenses.
Unless otherwise agreed in writing, Mortgagor will pay when due and payable all
appraisal fees, recording fees, taxes, brokerage fees and commissions, abstract fees,
title policy fees, escrow fees, attorneys' fees, court costs, fees of inspecting
architect(s) and engineer(s) and all other costs and expenses of every character
which have been incurred or which may hereafter be incurred by Mortgagee in
connection with: (a) the preparation and execution of the Loan Documents; (b) the

funding of the Loan; (c) in the event an Event of Default occurs hereunder or under the Note or any of the Loan Documents, all costs, fees and expenses, including, without limitation, all reasonable attorneys' fees in connection with the enforcement under the Note or foreclosure under this Mortgage, preparation for enforcement of this Mortgage or any other Loan Documents, whether or not suit or other action is actually commenced or undertaken; (d) enforcement of this Mortgage or any other Loan Documents; (e) court or administrative proceedings of any kind to which Mortgagee may be a party, either as plaintiff or defendant, by reason of the Note, the Mortgage or any other Loan Documents; (f) preparation for and actions taken in connection with Mortgagee's taking possession of the Mortgaged Property; (g) negotiations with Mortgagor, its beneficiary, or any of its agents in connection with the existence or cure of any Event of Default or default; (h) any proposed refinancing by Mortgagor or any other person or entity of the debt secured hereby; (i) the transfer of the Mortgaged Property in lieu of foreclosure; (j) inspection of the Mortgaged Property pursuant to Section 1.15; and (k) the approval by Mortgagee of actions taken or proposed to be taken by Mortgagor, its beneficiary, or other person or entity which approval is required by the terms of this Mortgage or any other of the Loan Document. Mortgagor will, upon demand by Mortgagee, reimburse Mortgagee or any takeout lender for all such expenses which have been incurred or which shall be incurred by either of them; and will indemnify and hold harmless Mortgagee from and against, and reimburse it for, the same and for all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including, without limitation, attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by it by reason of, on account of or in connection with any bodily injury or death or property damage occurring in or upon or in the vicinity of the Mortgaged Property through any cause whatsoever or asserted against it on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Property, or with this Mortgage or the Indebtedness.

### 1.13 Mortgagee's Performance of Defaults.
If Mortgagor defaults in the payment of any tax, Assessment, encumbrance or other Imposition, in its obligation to furnish insurance hereunder, or in the performance or observance of any other covenant, condition, agreement or term in this Mortgage, the Note or in any of the Loan Documents, Mortgagee may, without obligation to do so, to preserve its interest in the Mortgaged Property, perform or observe the same, and all payments made (whether such payments are regular or accelerated payments) and costs and expenses incurred or paid by Mortgagee in connection therewith shall become due and payable immediately. The amounts so incurred or paid by Mortgagee, together with interest thereon at the default rate, as provided in the Note, from the date incurred until paid by Mortgagor, shall be added to the Indebtedness and secured by the lien of this Mortgage to the extent permitted by law. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Mortgaged Property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition, agreement or term, without

thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor.

### 1.14 Financial Statements, Books, and Records.
Mortgagor will furnish to Mortgagee, within thirty (30) days after a request therefor, a detailed statement in writing, covering the period of time specified in such request, showing all income derived from the operation of the Mortgaged Property, and all disbursements made in connection therewith, and containing a list of the names of all tenants and occupants of the Mortgaged Property, the portion or portions of the Mortgaged Property occupied by each such tenant and occupant, the rent and other charges payable under the terms of their leases or other agreements and the period covered by such leases or other agreements.

### 1.15 Inspection.
Mortgagee, and any persons authorized by Mortgagee, shall have the right, at Mortgagee's option, to enter and inspect the Premises during the fourth (4th) month and at all other reasonable times during the term of the Loan. Mortgagor shall pay any professional fees and expenses, which may be incurred by Mortgagee in connection with such inspection.

### 1.16 Loan to Value Covenant.
If at any one or more time(s) during the term of the Note the then aggregate outstanding and committed principal amount of the Note, plus accrued interest and fees thereon, plus all amounts outstanding under any debts secured by prior liens on the Mortgaged Property, is greater than sixty five percent (65%) of the value of the Mortgaged Property, as determined by Mortgagee based upon Mortgagee's review of any appraisal and such other factors as Mortgagee may deem appropriate, then Mortgagor shall within thirty (30) days following a request by Mortgagee, prepay the Note by an amount sufficient to cause the then outstanding principal amount of the Note, plus accrued interest and fees thereon, to be reduced to an amount equal to or less than sixty five (65%) of the value of the Mortgaged Property. The inability of Mortgagor to reduce the principal balance of the Note within thirty (30) days following request by Mortgagee shall be, at Mortgagee's option, an Event of Default, hereunder.

### ARTICLE TWO: DEFAULTS
### 2.01 Event of Default.
The term "Event of Default" or "default" wherever used in this Mortgage, shall mean any one or more of the following events: (a) failure by Mortgagor to pay any installment of principal and/or interest under the Note within five (5) days after the same becomes due and payable; (b) failure by Mortgagor to observe or perform, or upon any default in, any other covenants, agreements or provisions herein, in the Note, or in any of the Loan Documents; (c) failure by Mortgagor to pay any Imposition, Assessment, other utility charges on or lien against the Mortgaged Property; (d) failure by Mortgagor to keep in force the insurance required in this Mortgage; (e) failure by Mortgagor to either deliver the policies of insurance

Page 13 of 27

described in this Mortgage or to pay the premiums for such insurance as provided herein; (f) failure by Mortgagor to pay any installment, which may not then be due or delinquent, of any Assessment for local improvements for which an official bill has been issued by the appropriate authorities and which may now or hereafter affect the Mortgaged Property, and may be or become payable in installments; (g) the actual or threatened waste, removal or demolition of, or material alteration to, any part of the Mortgaged Property, except as permitted herein; (h) the vesting of title, or any sale, conveyance, transfer, leasing, assignment or further encumbrance in any manner whatsoever of any interest in the Mortgaged Property, or any part thereof, in or to anyone other than the present owner, or any change in title or ownership of the Mortgaged Property, or any part thereof, without the prior written consent of Mortgagee; (i) all or a material portion of the Mortgaged Property being taken through condemnation, eminent domain, or any other taking such that Mortgagee has reason to believe that the remaining portion of the Mortgaged Property is insufficient to satisfy the outstanding balance of the Note, or the value of the Mortgaged Property being impaired by condemnation, eminent domain or any other taking, (which term when used herein shall include, but not be limited to, any damage or taking by any governmental authority or any other authority authorized by the laws of any state or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily for a period in excess of thirty (30) days, or permanently; (j) the merger or dissolution of Mortgagor or the death of any guarantor, if applicable of the Note; (k) any representation or warranty of Mortgagor made herein or in any such guaranty or in any certificate, report, financial statement, or other instrument furnished in connection with the making of the Note, the Mortgage, or any such guaranty, shall prove false or misleading in any material respect; (l) Maker makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets; (m) Mortgagor files, or becomes the subject of, a petition in bankruptcy, or upon the commencement of any proceeding or action under any bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Mortgagor, provided however, that Mortgagor shall have sixty (60) days from the filing of any involuntary petition in bankruptcy to have the same discharged and dismissed;(n) the Mortgaged Property becomes subject to (1) any tax lien which is superior to the lien of the Mortgage, other than a lien for local real estate taxes and assessments not due and payable or (2) any mechanic's, materialman's, or other lien which is, or is asserted to be, superior to the lien of the Mortgage and such lien shall remain undischarged for thirty (30) days, (o) Mortgagor fails to promptly cure any violations of laws or ordinances affecting or which may be interpreted to affect the Mortgaged Property;(p) in the event of any material adverse change in the financial condition of Mortgagor; or (q) any of the aforementioned events occur with respect to any guarantor, if applicable.

## ARTICLE THREE: REMEDIES

In the event that an Event of Default or default shall have occurred, the remedies available to Mortgagee include, but are not limited to, any and all rights and remedies available hereunder, any and all rights and remedies available at law, in equity, or by statute. Without limiting the foregoing, the rights and remedies available to Mortgagee shall include, but not be limited to, any one or more of the following:

### 3.01 Acceleration of Maturity.
If an Event of Default shall have occurred, Mortgagee may, at its option, declare without demand or notice all of the outstanding Indebtedness to be due and payable immediately, and upon such declaration such Indebtedness shall immediately become and be due and payable without demand or notice.

### 3.02 Mortgagee's Right to Enter and Take Possession.
If an Event of Default shall have occurred, Mortgagor, upon demand on Mortgagee, shall forthwith surrender to Mortgagee the actual possession of the Mortgaged Property and Mortgagee itself, or by such officers or agents as it may appoint, may enter and take possession of the Mortgaged Property, collect and receive the rents and income therefrom, and to apply so much of said rents and income as may be required in the necessary expenses of running said Premises, including reasonable attorneys' fees, management agents' fees, and if the Mortgagee manages the Premises with its own employees, an amount equal to the customary management agents' fees charged for similar property in the area where the Premises are located, and to apply the balance of said rents and income to the payment of the amounts due upon said Note, or in payment of taxes assessed against the Premises, or both. And for this purpose, and in case of such default, the Mortgagor hereby assigns, transfers and sets over to the Mortgagee the rents and income accruing from said Premises. Nothing contained in the foregoing provisions shall impair or affect any right or remedy which the Mortgagee might now or hereafter have, were it not for such provisions, but the rights herein given shall be in addition to any others which the Mortgagee may have hereunder.

### 3.03 Receiver.
If an Event of Default shall have occurred, Mortgagee, to the extent permitted by law and without regard to the value or occupancy of the security, shall be entitled to apply for the appointment of a receiver of the rents and profit of the Mortgaged Property without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Mortgaged Property as security for the amounts due Mortgagee, or the solvency of any person or limited liability company liable for the payment of such amounts.

### 3.04 Waiver of Appraisement, Valuation, Stay, Exemption, and Redemption Laws, etc.; Marshaling.

Mortgagor agrees to the full extent permitted by law that after an Event of Default neither Mortgagor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, exemption, moratorium, or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, any and all right to have the assets comprising the Mortgaged Property marshaled upon any foreclosure hereof.

### 3.05 Suits to Protect the Property.

Mortgagee shall have the power and authority to institute and maintain any suits and proceedings as Mortgagee may deem advisable in order to (a) prevent any impairment of the Mortgaged Property, (b) foreclose this Mortgage, (c) preserve and protect its interest in the Mortgaged Property, and (d) to restrain the enforcement of, or compliance with, any legislation or other governmental enactment, rule, or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Mortgagee's interest.

### 3.06 Proofs of Claim.

In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial case or proceeding affecting Mortgagor, its creditors or its property, Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceeding for the entire Indebtedness at the date of the institution of such case or proceeding, and for any additional amounts which may become due and payable by Mortgagor after such date.

### 3.07 Application of Monies by Mortgagee.

After the occurrence of an Event of Default, any monies collected or received by Mortgagee shall be applied in such priority as Mortgagee may determine in its sole and absolute discretion, to such matters including, but not limited to, the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of Mortgagee, to deposits for Impositions and Insurance and insurance premiums due, to the cost of insurance, Impositions, Assessments, and other charges and to the payment of the Indebtedness.

### 3.08 No Waiver.

Notwithstanding any course of dealing or course of performance, neither failure nor delay on the part of Mortgagee to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

### 3.09 No Waiver of One Default to Affect Another.

No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon. If Mortgagee (a) grants forbearance or an extension of time for the payment of any of the Indebtedness; (b) takes other or additional security for the payment thereof; (c) waives or does not exercise any right granted in the Note, this Mortgage or any other of the Loan Documents; (d) releases any part of the Mortgaged Property from the lien of this Mortgage or any other of the Loan Documents or releases or any party liable under the Note; (e) consents to the filing of any map, plat or replat of the Premises; (f) consents to the granting of any easement on the Premises; or (g) makes or consents to any agreement changing the terms of this Mortgage or subordinating the lien or any charge hereof, no such act or omission shall release, discharge, modify, change or affect the original liability under this Mortgage or otherwise of Mortgagor, or any subsequent purchaser of the Mortgaged Property or any part thereof or any maker, co-signer, endorser, surety or guarantor. No such act or omission shall preclude Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default nor, except as otherwise expressly provided in an instrument or instruments executed by Mortgagee, shall the lien of this Mortgage be altered thereby.

### 3.10 Remedies Cumulative.

No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other of the Loan Documents is exclusive of any other right, power and remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other of the Loan Documents, or now or hereafter existing at law, in equity or by statute.

### 3.11 Interest after Event of Default; Default Rate.

If an Event of Default shall have occurred, all sums outstanding and unpaid under the Note and this Mortgage shall, at Mortgagee's option, bear interest at the default rate set forth in the Note.

## ARTICLE FOUR: MISCELLANEOUS PROVISIONS

### 4.01 Heirs, Successors and Assigns Included in Parties.

Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Mortgagor or Mortgagee shall bind and inure to the benefit of their respective heirs, successors and assigns, whether so expressed or not.

## 4.02 Addresses for Notices, etc.

(a) Any notice, report, demand or other instrument authorized or required to be given or furnished under this Mortgage shall be in writing, signed by the party giving or making the same, and shall be sent by certified mail, return receipt requested, as follows:

| MORTGAGOR: | Joseph Severino |
| | 721 Oriole Ave. |
| | Park Ridge, IL 60068 |

Copy to:

| MORTGAGEE: | Capital Funding Financial LLC |
| | ISAOA/ATIMA |
| | 2234 N Federal Hwy #542 |
| | Boca Raton, FL 33431 |

(b) Either party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

## 4.03 Headings.

The headings of the articles, sections, paragraphs and subdivisions of this Mortgage are for convenience of reference only, are not to be considered a part hereof and shall not limit or expand or otherwise affect any of the terms hereof.

## 4.04 Provisions Subject to Applicable Laws; Severability.

All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid or unenforceable. In the event that any of the covenants, agreements, terms or provisions contained in the Note, or in this Mortgage or in any other Loan Documents shall be deemed invalid, illegal or unenforceable in any respect by a court with appropriate jurisdiction, the validity of the remaining covenants, agreements, terms or provisions contained herein or in the Note or in any other Loan Documents shall be in no way affected, prejudiced or disturbed thereby.

## 4.05 Modification.

This Mortgage, the Note, and all other Indebtedness are subject to modification. Neither this Mortgage, nor any term hereof, may be changed, waived, discharged or terminated orally, or by any action or inaction, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge, or termination is sought.

Page 18 of 27

### 4.06 Governing Law.

THIS MORTGAGE IS MADE BY MORTGAGOR AND ACCEPTED BY MORTGAGEE IN THE STATE OF FLORIDA EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS CREATED IN THE MORTGAGED PROPERTY UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED. TO THE FULLEST EXTENT PERMITTED BY THE LAW OF THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED, THE LAW OF THE STATE OF FLORIDA SHALL GOVERN THE VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER (BUT THE FOREGOING SHALL NOT BE CONSTRUED TO LIMIT LENDER'S RIGHTS WITH RESPECT TO SUCH SECURITY INTEREST CREATED IN THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED).

### 4.07 Prejudgment Remedies.

THE MORTGAGOR HEREBY REPRESENTS, COVENANTS, AND AGREES THAT THE PROCEEDS OF THE LOAN SECURED BY THIS MORTGAGE, AND EVIDENCED BY THE LOAN AGREEMENT, AND THE NOTE SHALL BE USED FOR GENERAL COMMERCIAL PURPOSES AND THAT SUCH LOAN IS A "COMMERCIAL TRANSACTION" AS DEFINED BY THE STATUTES OF THE STATE OF FLORIDA. THE MORTGAGOR HEREBY WAIVES SUCH RIGHTS AS IT MAY HAVE TO NOTICE AND/OR HEARING UNDER ANY APPLICABLE FEDERAL OR STATE LAWS INCLUDING, WITHOUT LIMITATION, FLORIDA STATUTES PERTAINING TO THE EXERCISE BY THE MORTGAGEE OF SUCH RIGHTS AS THE MORTGAGEE MAY HAVE INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO SEEK PREJUDGMENT REMEDIES AND/OR TO DEPRIVE THE MORTGAGOR OF OR AFFECT THE USE OF OR POSSESSION OR ENJOYMENT OF THE MORTGAGOR'S PROPERTY PRIOR TO THE RENDITION OF A FINAL JUDGMENT AGAINST THE MORTGAGOR. THE MORTGAGOR FURTHER WAIVES ANY RIGHT IT MAY HAVE TO REQUIRE THE MORTGAGEE TO PROVIDE A BOND OR OTHER SECURITY AS A PRECONDITION TO OR IN CONNECTION WITH ANY PREJUDGMENT REMEDY SOUGHT BY THE MORTGAGEE, AND WAIVES ANY OBJECTION TO THE ISSUANCE OF SUCH PREJUDGMENT REMEDY BASED ON ANY OFFSETS, CLAIMS, DEFENSES, OR COUNTERCLAIMS TO ANY ACTION BROUGHT BY THE MORTGAGEE. FURTHER, THE MORTGAGOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISAL, HOMESTEAD, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.

THE SIGNATORY/MANAGING MEMBERS OF THE MORTGAGOR HEREBY REPRESENTS THAT THEIR PRIMARY RESIDENCE IS AT: <u>1392 West Old Mill Rd., Lake Forest, IL 60045</u>.

**4.08 Effects of Changes and Laws Regarding Taxation.**
In the event of an enactment of any law deducting from the value of the Mortgaged Property any mortgage lien thereon, or imposing upon Mortgagee the payment of any or part of the Impositions, charges, or Assessments previously paid by Mortgagor pursuant to this Mortgage, or change in the law relating to the taxation of mortgages, debts secured by mortgages or Mortgagee's interest in the Mortgaged Property so as to impose new incidents of taxes on Mortgagee, then Mortgagor shall pay such Impositions or Assessments or shall reimburse Mortgagee therefor; provided that, however, if in the opinion of counsel to Mortgagee such payment cannot lawfully be made by Mortgagor, then Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable without prior notice to Mortgagor, and Mortgagee may invoke any remedies permitted by applicable law.

**4.09 Purpose of Loan.**
Mortgagor represents and warrants that the proceeds from this Loan are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Mortgagor acknowledges that Mortgagee has made this Loan to Mortgagor in reliance upon the above representation. Said representation will survive the closing and repayment of the Loan.

**4.10 Duplicate Originals.**
This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

**4.11 Usury Laws.**
This Mortgage, the Note, and the other Loan Documents are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate permitted by applicable law. If, by the terms of this Mortgage, the Note, or any of the Loan Documents, Mortgagor is at any time required or obligated to pay interest on the debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note. Borrower represents and warrants that the amounts secured by this Mortgage will be used for the purposes specified in paragraph 815 ILCS 205/4(1)(c), and that the principal obligation secured hereby constitutes a "business loan" within the purview of said paragraph.

**4.12 Construction.**
This Mortgage and the Note shall be construed without regard to any presumption or other rule requiring construction against the party causing this Mortgage and the Note to be drafted.

**4.13 Release of Mortgage.**
If all of Mortgagor's obligations under the Loan Documents are paid in full in accordance with the terms of the Loan Documents and all amounts due under the Mortgage and accompanying loan documents are paid in full, no Default then exists hereunder and no Event of Default then exists under any other Loan Document, and if Mortgagor shall well and truly perform all of Mortgagor's covenants contained herein, then this conveyance shall become null and void and be released, and the Mortgaged Property shall be released to Mortgagor, at Mortgagor's request and expense.

**4.14 Entire Agreement.**
This Mortgage, together with the other Loan Documents executed in connection herewith, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all prior proposals, negotiations, agreements, and understandings relating to such subject matter. In entering into this Mortgage, Mortgagor acknowledges that it is not relying on any representation, warranty, covenant, promise, assurance, or other statement of any kind made by the Mortgagee or by any employee or agent of the Mortgagee.

**4.15 Provisional Remedies: Foreclosure and Injunctive Relief.**
Nothing shall be deemed to apply to limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or non-judicially against any real or personal property collateral, or to exercise judicial or non-judicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in action bought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding

**4.16 State Specific Provisions.**
**Foreclosure. Mortgagee may institute an action to foreclose this Mortgage against the Mortgaged Property, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate stipulated in the Note to the date of default, and thereafter at the Default Rate specified in the Note, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums which may have**

Page 21 of 27

been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, completion of construction of improvements, insurance or repairs to the Mortgaged Property, all costs of suit, together with interest at such Default Rate on any judgment obtained by Mortgagee from and after the date of any foreclosure sale until actual payment is made as of the full amount due Mortgagee, and reasonable attorneys' fees for collection, or Mortgagee may foreclose only as to the sum past due with interest and costs as above provided, without injury to this Mortgage or the displacement or impairment of the remainder of the lien thereof, and at such foreclosure sale the Mortgaged Property shall be sold subject to all remaining items of Indebtedness; and Mortgagee may again foreclose, in the same manner, as often as there may be any sum past due. In the event Mortgagee forecloses this Mortgage against the Mortgaged Property, Mortgagee may, at its option and in its sole and absolute discretion, assume all rights (but not the obligation unless consented to by Mortgagee) as owner of the Mortgaged Property, and to assume all rights and privileges of Mortgagor thereunder; or

If the Indebtedness shall have become due and payable, whether by lapse of time or by acceleration, then and in every such case Mortgagor confer upon Mortgagee the authority and power to proceed to protect and enforce its rights by a suit or suits in equity or at law, either for the specific performance of any covenant or agreement contained herein or in the Loan Documents, or in aid of the execution of any power herein or therein granted, or for the foreclosure of this Mortgage by advertisement or action, or for the enforcement of any other appropriate legal or equitable remedy.

If Mortgagee invokes the STATUTORY POWER OF SALE, Mortgagee shall mail a copy of a notice of sale to Mortgagor, and to other persons prescribed by applicable law, in the manner provided by applicable law. Mortgagee shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Mortgagee or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; and (c) any excess to the person or persons legally entitled to it in accordance with the terms of this Mortgage.

**Future Advances.** Pursuant to the laws of the State of Florida, this Mortgage shall secure not only the existing Indebtedness evidenced by the Note, but also such future advances as may be made by Mortgagee to Mortgagor in accordance with the Note, this Mortgage, or any other Loan Document, whether or not such advances are obligatory or are to be made at the sole option of Mortgagee, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, and the total amount of Indebtedness that shall be so secured by this Mortgage may decrease or increase from time to time, provided that the total unpaid balance so

Page 22 of 27

secured at any one time shall not exceed a principal amount of **Seven Hundred Fifteen Thousand and 00/100 Dollars ($715,000.00)** plus interest thereon and plus any disbursements made for the payment of taxes, levies or insurance on the property covered by the lien of this Mortgage, together with interest on such disbursements. It shall be a default by Mortgagor under the terms of this Mortgage if Mortgagor, or its successors and assigns, shall record a notice limiting the maximum principal amount that may be secured by the lien of this Mortgage, which notice would have the effect of prohibiting Mortgagee from making future advances under this Mortgage to the full amount above set forth.

**Jurisdiction.** Mortgagor consents to the exclusive jurisdiction of the courts of the State of Florida and the Federal Courts located in Florida in any and all actions and proceedings whether arising hereunder or under any other agreement or undertaking, and irrevocably agrees to service of process by certified mail, return receipt requested, postage prepaid, to its address set forth herein or such other address as Mortgagor specifies to Mortgagee in writing.

**Venue.** Mortgagor agrees that venue for any action brought by Mortgagee under this Mortgage shall be Palm Beach County, Florida. Venue under the Note and any other of the Loan Documents shall be at Mortgagee's option.

**Release.** Upon payment of all sums secured by this Mortgage, Mortgagee shall release this Mortgage. Mortgagor shall pay any recordation costs. Mortgagee may charge Mortgagor a fee for releasing this Mortgage, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**Attorneys' Fees.** As used in this Mortgage and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**Jury Trial Waiver.** The Mortgagor hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Mortgage or the Note.

**Inconsistencies.** In the event of any inconsistencies between the terms and conditions of this Section and the terms and conditions of this Mortgage, the terms of this Section shall control and be binding.

**Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**Illinois Collateral Protection Act.** Unless Borrower provides Lender with evidence of the insurance coverage required by this Mortgage, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the Property. This

Page 23 of 27

insurance may, but need not, protect Borrower's interest. The coverage that Lender purchases may not pay any claim that Borrower may make or any claim that is made against Borrower in connection with the Property. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by this Mortgage. If Lender purchases insurance for the Property, Borrower will be responsible for the costs of such insurance, including interest and any other charges that may be imposed in connection with the placement of such insurance, until the effective date of the cancellation or expiration of such insurance. Without limitation of any other provision of this Mortgage, the cost of such insurance shall be added to the indebtedness secured hereby. The cost of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

**Choice of Law.** **Florida** law shall exclusively govern the enforcement and interpretation of this Mortgage.

**NOW, THEREFORE,** If the Note and any Indebtedness secured by this Mortgage shall be well and truly paid according to their tenor and if all the terms, covenants, conditions, and agreements of the Mortgagor contained herein and in the Note and Loan Documents, shall be fully and faithfully performed, observed, and complied with, then this mortgage deed shall be void, but shall otherwise remain in full force and effect.

*[No further text on this page; signatures appear on the following page]*

Page 24 of 27

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of January 17, 2020.

Signed, Sealed, and Delivered
in the Presence of:

MORTGAGOR:

Witness Name:_____

Joseph Severino

Witness Name:_____

STATE OF __IL__ )
COUNTY OF __Lake__ )

a married man

On January __17th__, 2020, before me, personally came Joseph Severino/who being by me duly sworn, did depose and say that he signed this instrument as his voluntary act and deed.

OFFICIAL SEAL
SUZANNE M. GERVAIS
Notary Public - State of Illinois
My Commission Expires Mar 14, 2023

NOTARY PUBLIC
COMMISSION #: _____

Page 25 of 27

## SCHEDULE A
### PROPERTY DESCRIPTION

Lot 1 in Doney Resubdivision, being a resubdivision of Lot 5 in Matthias Subdivision, Unit 1, in Section 7, Township 43 North, Range 12, East of the Third Principal Meridian, according to the Plat thereof recorded August 26, 1980, as Document 2074764, in Lake County, Illinois.

Parcel ID#: 16-07-301-080

Property address is commonly known as: 1392 West Old Mill Road, Lake Forest, IL 60045

## SCHEDULE B
## PERMITTED ENCUMBRANCES

As outlined on Schedule B of the Lender's title policy.

Ty, ASR
Recorded: 2/6/2020 1:02:35 PM
Fee Amt: $60.00 Page 1 of 8
Receipt#: 202000007467
IL Rental Housing Fund: $9.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder

Greater Illinois Title Co.
300 E. Roosevelt Road
Wheaton, IL 60187

File# 7631879

GIT File #: 71003783g

# RECORDING COVER SHEET

Lake County

## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

710037836 (1/7)
Prepared By and
**After Recording Return to:**
**CAPITAL FUNDING FINANCIAL LLC**
**2234 N FEDERAL HWY #542**
**BOCA RATON, FL 33431**

## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT made by **JOSEPH SEVERINO,** an individual, having an address of **721 Oriole Ave., Park Ridge, IL 60068** ("Assignor") and **CAPITAL FUNDING FINANCIAL LLC,** a Florida limited liability company having its principal place of business at **2234 N Federal Hwy #542, Boca Raton, FL 33431** ("Assignee").

### WITNESSETH

FOR VALUE RECEIVED, Assignor hereby grants, transfers, and assigns to Assignee, any and all leases or leases, with amendments, if any, and all month-to-month tenancies with respect to portions or all of the real property known as **1392 West Old Mill Rd., Lake Forest, IL 60045 (the "Property"),** and more particularly described on **SCHEDULE A,** attached hereto and made a part hereof (the "Premises"), and any extensions and renewals thereof and any guarantees of the lessee's obligations thereunder, and all rents, income, and profits arising from the leases and extensions and renewals thereof, if any, and together with all rents, income, and profits due or to become due from the Premises and from any and all of the leases or tenancies for the use and occupancy of the Premises or any part thereof which are now in existence or which may be created in the future during the term of this Assignment, whether or not recorded; together with and including, the Assignor's entire interest in any lease, tenancy, rental, or occupancy agreement now existing or which may be made hereafter affecting the Premises, including but not limited to those leases listed on **SCHEDULE B** attached hereto and made a part hereof (all of the aforementioned leases and tenancies, now or hereafter existing, are hereinafter referred to as the "Lease" or "Leases") and together with all the right, power, and authority of the Assignor to alter, modify, or change or to terminate the term thereof or accept a surrender thereof or to cancel the same or to waive or release the lessee from the performance or observance by the lessee of any obligation or condition thereof or to accept rents or any other payments thereunder for more than thirty (30) days prior to accrual, for the purposes of securing (a) payment of all sums now or at any time hereunder due the Assignee as evidenced by that certain Commercial Promissory Note from Assignor, in the amount of up to **SEVEN HUNDRED FIFTEEN THOUSAND and 00/100 DOLLARS ($715,000.00)** of even date herewith, including any extensions or renewals thereof (the "Note"), and secured by an Commercial Mortgage, Security Agreement and Fixture Filing from Assignor, of even date herewith (the "Mortgage"), which Mortgage will be recorded on the date that this instrument is recorded, and (b) performance and discharge of each and every obligation, covenants, and agreement contained herein and in the Mortgage, the Note, and any and all other documents executed and/or delivered in connection therewith.

Assignor and Assignee further hereby agree as follows:

**(1) Performance of Leases.** Assignor shall at all times keep, perform, and observe all of the covenants, agreements, terms, provisions, conditions, and limitations of each lease affecting the Premises on its part to be kept, and performed thereunder. Assignor shall not, without the written consent of Assignee, directly or indirectly cancel, terminate, waive or release any lessee from the

performance or observance of any obligation or condition thereof, or accept any surrender or modify or amend any lease affecting the Premises, or accept rents or any payments thereunder for more than thirty (30) days prior to accrual.

**(2) Prohibition of Transfer.** So long as the Note shall remain unpaid or the Mortgage unreleased, Assignor shall not convey the Premises to any lessee or to anyone else.

**(3) Rental Information.** Assignor shall, during the term of the Note, at the request of Assignee, deliver to Assignee annually a completed rent roll of the Premises listing the names of all tenants, the term of each Lease, and the monthly rental of same.

**(4) Subsequent Leases.** All subsequent Leases and tenancies for the use and occupation of the Premises or any part thereof shall be and are hereby made subject to all of the terms of this Assignment. Assignor agrees to deliver copies of all subsequent Leases to Assignee promptly upon their execution.

**(5) Indemnification.** Assignee shall not be obligated to perform or discharge any obligation under any Lease, or under or by reason of this Assignment, and Assignor hereby agrees to indemnify Assignee against and hold it harmless from any and all liability, loss, or damage which it may incur under any Lease or under or by reason of this Assignment and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligation or undertaking on its part to perform or discharge any of the terms of any Lease; should Assignee incur any such liability, loss, or damage under any Lease or under or by reason of this Assignment, or in defense against any such claims or demands, the amount thereof, including costs, expenses, and reasonable attorneys' fees, together with interest thereon at the rate set forth in the Note, shall be secured hereby and by the Mortgage, and Assignor shall reimburse Assignee therefor immediately upon demand.

**(6) Right to Enter and Possess.**

(a) Upon or at any time after default in the payment of any indebtedness secured hereby or in the performance of any obligation, covenant, or agreement herein or in the Mortgage or the Note, or in any other document, instrument, or agreement executed and/or delivered in connection herewith or therewith, or in Assignor's covenants in any Lease, Assignee may, at its option, without notice, and without regard to the adequacy of the security for the indebtedness hereby secured, in person or by agent, with or without bringing any action, suit, or proceeding: (1) enter upon and take possession of the Premises, and have, hold, manage, lease, and operate the same on such terms, employing such management agents, and for such period of time as Assignee may deem proper; (2) collect and receive all rents, issues, and profits of the Premises, including those past due, with full power to make from time to time all alterations, renovations, repairs, or replacements thereto as it may deem proper and make, enforce, modify, and accept the surrender of any Leases; (3) fix or modify rents; (4) do all things required of or permitted to Assignor under any Lease; (5) do any acts which Assignee deems proper to protect the security hereof until all indebtedness secured hereby is paid in full; (6) either with or without taking possession of the Premises, in its own name, sue for or otherwise collect and receive all rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, management agents' fees, and, if Assignee manages the Premises with its own employees, an amount equal to the customary management agents' fees charged for similar

property in the area where the Premises are located, upon any indebtedness secured hereby in such order as Assignee may actually receive from the Premises.

(b) Assignee shall not be accountable for more monies than it actually receives from the Premises; nor shall it be liable for failure to collect rents for any reason whatsoever. It is not the intention of the parties hereto that an entry by Assignee upon the Premises under the terms of this instrument shall constitute Assignee as a "Mortgagee in possession" in contemplation of law, except at the option of Assignee. Assignor shall facilitate, in all reasonable ways, any action taken by Assignee under this **Section 6** and Assignor shall, upon demand by Assignee, execute a written notice to each lessee and occupant directing that rent and all other charges be paid to Assignee.

**(7) Representations and Warranties.** Assignor hereby represents and warrants that:

(a) Assignor has not executed any prior assignment or pledge of any of its rights as lessor under any Lease, nor are its rights encumbered with respect to any Lease, or any of the rents, income, or profits due or to become due from the Premises, except that they are encumbered by the Mortgage and herein;

(b) Assignor has good right to assign any Lease and the rents, income, and profits due or to become due, from the Premises;

(c) Assignor has not done anything that might prevent Assignee from or limit Assignee in acting under the provisions hereof;

(d) Assignor has not accepted rent under any Lease or under any rental or occupancy agreement more than thirty (30) days in advance of its due date;

(e) All present Leases, together with all amendments and modifications thereto and all collateral agreements, letter agreements, waivers, and other documents affecting said Leases are valid, enforceable, and unmodified, and copies thereof have been furnished to Assignee, and there is no present default by any party thereto.

**(8) Assignor's Rights Prior to Default.** So long as there is no default in the payment of any indebtedness secured hereby or in the performance of any obligation, covenant, or agreement herein or in the Mortgage, Note, or any other document, instrument, or agreement executed and/or delivered in connection therewith or evidencing or securing said indebtedness, Assignor shall have the right to collect, but not more than thirty (30) days prior to accrual, all rents, issues, and profits from the Premises and to retain, use, and enjoy the same.

**(9) Successors and Assigns.** In addition to all other rights Assignee may have at law or equity, Assignee may assign its rights hereunder to any subsequent holder of the Note. This Assignment shall be binding on Assignor, and its successors, legal representatives, and assigns and shall inure to the benefit of Assignee, its successors, and assigns.

**(10) Release of Mortgage.** Upon the payment in full of all indebtedness secured hereby, as evidenced by the recording or filing of a full release of the Mortgage executed by the then holder of the Mortgage, this Assignment shall become and be void and of no effect.

**(11) Modification.** This Assignment may not be changed orally, but only by an agreement in writing and signed by the party or parties against whom enforcement of any waiver, change, modification, or discharge is sought.

**(12) Miscellaneous.** Assignee may take or release other security, may release any party primarily or secondarily liable for any indebtedness secured hereby, may grant extensions, renewals, or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness without prejudice to any of the rights and remedies under the Note and the Mortgage, but this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Assignee under the terms thereof. The right of Assignee to collect said indebtedness and to enforce any other security therefor held by it may be exercised by Assignee prior to, simultaneously with, or subsequent to any action taken by it hereunder. Any failure by Assignee to insist upon the strict performance by Assignor of any of the terms and provisions hereof shall not be deemed a waiver of any of the terms and provisions hereof, and Assignee may thereafter insist upon strict performance.

**(13) Headings.** The headings of the sections of this Assignment are for convenience of reference only, are not to be considered a part hereof and shall not limit or expand or otherwise affect any of the terms hereof.

**(14) Severability.** If any term, clause, or provision hereof shall be adjudged to be invalid or unenforceable, the validity or enforceability of the remainder shall not be affected thereby and each such term, clause, and provision shall be valid and enforceable to the fullest extent permitted by law.

**(15) Jurisdiction. AT LENDER'S ELECTION, TO BE ENTERED IN ITS SOLE DISCRETION, ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BORROWER OR LENDER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN FLORIDA, AND BORROWER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.**

*[This space intentionally left blank]*

IN WITNESS WHEREOF, the Collateral Assignment of Leases and Rents has been duly signed, sealed, and acknowledged and delivered on January 17, 2020.

**ASSIGNOR HEREBY ACKNOWLEDGES THAT IT HAS RECEIVED A TRUE COPY OF THIS ASSIGNMENT WITHOUT CHARGE.**

**Signed, Sealed, and Delivered
in the Presence of:**

                                        **ASSIGNOR:**

Witness Name:_____                    Joseph Severino


Witness Name:_____


STATE OF ___IL_____ )

COUNTY OF __Lake__ )

On January ___17th___, 2020, before me, personally came Joseph Severino, who being by me duly sworn, did depose and say that he signed this instrument as his voluntary act and deed.

NOTARY PUBLIC
COMMISSION #: _____

OFFICIAL SEAL
SUZANNE M. GERVAIS
Notary Public - State of Illinois
My Commission Expires Mar 14, 2023

Case 22-00769 Claim 11-1 Part 4 Filed 12/18/22 Desc Attachment 3 Page 56 of 64

## SCHEDULE A

### PROPERTY DESCRIPTION

Lot 1 in Doney Resubdivision, being a resubdivision of Lot 5 in Matthias Subdivision, Unit 1, in Section 7, Township 43 North, Range 12, East of the Third Principal Meridian, according to the Plat thereof recorded August 26, 1980, as Document 2074764, in Lake County, Illinois.

Parcel ID#: 16-07-301-080

Property address is commonly known as: 1392 West Old Mill Road, Lake Forest, IL 60045

## SCHEDULE B

## LEASES

N/A

710037836-(3|3)

GREATER ILLINOIS TITLE COMPANY
300 East Roosevelt Road
Wheaton, Illinois 60187

Image# 059009770003 Type: UFS
Recorded: 01/28/2020 at 02:48:42 PM
Receipt#: 2020-00005307
Page 1 of 3
Fees: $58.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 7628832

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

NLP Finance, LLC
665 Simonds Road
Williamstown, MA 01267

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Severino | Joseph | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 721 Oriole Ave. | Park Ridge | IL | 60068 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Capital Funding Financial LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2234 N Federal Hwy, #542 | Boca Raton | FL | 33431 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Schedule A and Exhibit A for property description.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor | |
| 8. OPTIONAL FILER REFERENCE DATA: | |

FILING OFFICE COPY --- UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

(39)

## SCHEDULE A
## PROPERTY DESCRIPTION

Lot 1 in Doney Resubdivision, being a resubdivision of Lot 5 in Matthias Subdivision, Unit 1, in Section 7, Township 43 North, Range 12, East of the Third Principal Meridian, according to the Plat thereof recorded August 26, 1980, as Document 2074764, in Lake County, Illinois.

Parcel ID#: 16-07-301-080

Property address is commonly known as: 1392 West Old Mill Road, Lake Forest, IL 60045

## EXHIBIT A

A. All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor (Mortgagor's successors or assigns), which are now or hereafter attached to the Land, which is located in the County of **Lake**, State of **Illinois** and more particularly described in Schedule "A" attached hereto, or the Improvements, or used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing, including, but without limiting the foregoing, all of the following items now owned or hereafter acquired by Mortgagor, any and all fixtures, systems, heating, ventilating, air conditioning, refrigerating, plumbing, water, sewer, lighting, generating, cleaning, storage, incinerating, waste disposal, sprinkler, fire extinguishing, communications, transportation (of people or things, including, but not limited to, stairways, elevators, escalators and conveyors), data processing, security and alarm, laundry, food or drink preparation, storage of serving, gas, electrical and electronic, water, and recreational uses or purposes; all tanks, pipes, wiring, conduits, ducts, doors, partitions, floor coverings, wall coverings, windows, window screens and shades, awnings, fans, motors, engines and boilers; motor vehicles; decorative items and art objects; and files, records and books of account (all of which are herein sometimes referred to together as "Accessories");

B. All (a) plans and specifications for the Improvements; (b) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (c) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Document (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (d) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (e) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (f) other properties, rights, titles and interests, if any, specified in any Section or any Article of this Mortgage as being part of the Property;

C. All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (a) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C) and (D); (b) any sale, lease or other disposition thereof; (c) each policy of insurance relating thereto (including premium refunds); (d) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (e) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

D. All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D) and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

## ALLONGE

This Allonge is affixed to, and is hereby made a part of, that certain Commercial Promissory Note, dated **January 17, 2020**, in the original principal amount of **$715,000.00** (the "Note"), made by **JOSEPH SEVERINO, an individual**, for the benefit of **CAPTIAL FUNDING FINANCIAL, LLC   a Florida limited liability company ISAOA/ATIMA** ("Assignor"), and evidences the endorsement of the Note by Assignor, by and between Assignor and the Assignee/Endorsee hereon, to wit:

The Note is hereby made PAYABLE TO THE ORDER OF **PATTEN FAMILY FINANCE, LLC, a Delaware limited liability company,** at 665 Simonds Road, Williamstown, MA 01267.

Dated this 17th day of January, 2020.

**ASSIGNOR:**

**CAPITAL FUNDING FINANCIAL LLC, a Florida limited liability company**

By: _____
Name: David DiNatale
Title: Managing Member

Image# 059321810002 Type: ASG
Recorded: 05/14/2020 at 02:40:23 PM
Receipt#: 2020-00028599
Page 1 of 2
Fees: $60.00
IL Rental Housing Fund: $9.00
Lake County IL Recorder
Mary Ellen Vandermeter Recorder

File 7656329

**REQUESTED BY & RETURN TO:**
NLP Finance, LLC
665 Simonds Road
Williamstown, MA 01267

PARCEL ID#:16-07-301-080
PROPERTY ADDRESS: 1392 West Old Mill Rd., Lake Forest, IL 60045

## ASSIGNMENT OF COMMERCIAL MORTGAGE, SECURITY AGREEMENT, FIXTURE FILING, AND COLLATERAL ASSIGNMENT OF LEASES & RENTS

This **ASSIGNMENT OF COMMERCIAL MORTGAGE, SECURITY AGREEMENT, FIXTURE FILING, AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS** (this "Assignment") is made effective as of January 17, 2020 (the "Effective Date"), by **CAPITAL FUNDING FINANCIAL LLC**, a Florida limited liability company, whose address is **2234 N Federal Hwy #542, Boca Raton, FL 33431** ("Assignor"), to **PATTEN FAMILY FINANCE, LLC**, a Delaware limited liability company, whose address is **665 Simonds Road, Williamstown, MA 01267** ("Assignee").

1. **For good and valuable consideration,** the receipt of which is hereby acknowledged, Assignor hereby assigns to Assignee all of Assignor's right, title and interest: (i) as "Lender" under that certain **Commercial Mortgage, Security Agreement and Fixture Filing AND Collateral Assignment of Leases and Rents** dated January 17, 2020 executed by **JOSEPH SEVERINO, an individual,** as "Borrower", and recorded in the Official Records of the County and State in which the Property (as defined in the Mortgage) is located on January 28, 2020, as File #7628831, together with the obligation therein described, all monies due and to become due thereunder, and all interest thereon, all rights arising therefrom, and all documents associated therewith (collectively, the **"Assigned Loan Documents"**).

2. As a condition to this Assignment, Assignee has agreed to and accepted the assignment described in Section 1 above, and has assumed the terms, covenants, obligations, and conditions required to be kept, performed, and fulfilled by Assignor under, and/or with respect to, the Assigned Loan Documents and the loan from and after the Effective Date.

3. This Assignment shall be binding upon and inure to the benefit of Assignee, Assignor and their respective successors and assigns.

*[Signature On Following Page]*



IN WITNESS WHEREOF, this Assignment is made to be effective as of the date first above written.

ASSIGNOR:
**CAPITAL FUNDING FINANCIAL LLC,**
a Florida limited liability company

By: _____
**David DiNatale, Managing Member**

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF FLORIDA                    )
                                    ) ss
COUNTY OF Palm Beach )

On 2/5/2020 , before me, Claudette D. Williams a Notary Public, personally appeared David DiNatale as Managing Member of Capital Funding Financial LLC, a Florida Limited Liability Company, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/ her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

```
CLAUDETTE D. WILLIAMS
Commission # GG 358451
Expires July 24, 2023
Bonded Thru Troy Fain Insurance 800-385-7019
```

(Seal)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER [optional] | |
|---|---|
| Tracy Desautels | 413-458-5220 |

B. E-MAIL CONTACT AT FILER [optional]
tdesautels@inlandinc.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

NLP Finance, LLC

665 Simonds Road

WILLIAMSTOWN, MA, 01267

RECEIVED

IL SECRETARY OF STATE
UNIFORM COMMERCIAL CODE

02/25/20    11:22

$20.00    Electronic

**09662415**          AS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
**25136047**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement.

3. ☑ ASSIGNMENT (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Patten Family Finance, LLC | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 665 Simonds Road | Williamstown | MA | 01267 | USA |

8. COLLATERAL CHANGE:  Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Capital Funding Financial LLC | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA

... the following of these involving the certain ... of prior of the interest of the ... of the mortgaged amount equaling: $50,000.00 and $15000.00 as an origination fee an initial upfront interest payment on these borrowed funds. The origination Fee will be paid at the time of lending on or before March 3, 2020 and the 10% payment will be paid on or before August 1, 2020.