**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re:

        JOSEPH SEVERINO,
                    Debtor.

Chapter 11
Case No. 22-00769
Hon. Timothy A. Barnes

_____

**AMENDED NOTICE OF MOTION**

    TO: See attached list

    PLEASE TAKE NOTICE that on **January 11, 2023, at 9:00 a.m.**, I will appear before the Honorable Timothy Barnes, or any judge sitting in that judge's place, **either** in courtroom 744 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, or electronically as described below, and present the *Amended Motion to Dismiss or Convert Case from 11 to 7 by Patten Family Finance, LLC*, a copy of which is attached.

    **All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

    **To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

    **To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode. **When prompted identify yourself by stating your full name**.

    **Meeting ID and password**. The meeting ID for this hearing is 161 329 5276 and the password is 433658. The meeting ID and password can also be found on the judge's page on the court's web site. To reach Judge Barnes' web page go to www.ilnb.uscourts.gov and click on the tab for Judges.

    **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

**CERTIFICATE OF SERVICE**

      I, Dawn R, Copley, certify that I served a copy of this Notice and *Amended Motion to Dismiss or Convert Case from 11 to 7 by Patten Family Finance, LLC*, on each person/entity shown on the attached list at the address shown and by the method indicated on the list on December 13, 2022, before 5:00 p.m., Central.

                                         By: /s/ Dawn R. Copley
                                            One of Its Attorneys

Dawn R. Copley (MI P53343)
dcopley@dickinson-wright.com
Dickinson Wright PLLC
500 Woodward Ave., Suite 4000
Detroit, MI  48226
(313) 223-3108

## Service List

**Electronic Notice Sent Through the ECF System:**

Ariel Weissberg, ariel@weissberglaw.com

Lina Toma, ltoma@carlsondash.com

Kurt M. Carslon, kcarlson@carlsondash.com

William S. Hackney, III, whackney@salawus.com

Michael M. Tannen, mtannen@tannenlaw.com

Patrick S. Layng, USTPRegion11.ES.ECF@usdoj.gov

William B. Avellone, bill.avellone@charteredmgt.com

**Notice Sent by First Class Mail:**

| | |
|---|---|
| Joseph Severino<br>1392 W. Old Mill Rd.<br>Lake Forest, IL  60045-3757 | Andre Perez<br>c/o Timothy M. Nolan Attorney at Law<br>53 West Monroe, Ste. 1137<br>Chicago, IL  60603 |
| Capital One Bank (USA), N.A.<br>By American InfoSource as Agent<br>4515 N. Santa Fe Ave.<br>Oklahoma City, OK  73118-7901 | Capital One Spark<br>PO Box 31293<br>Salt Lake City, UT  84131-0293 |
| Citibank Doublecash<br>PO Box 6241<br>Sioux Falls, SD  57117-6241 | Illinois Department of Revenue<br>Bankruptcy Unit<br>PO Box 19035<br>Springfield, IL  62794-9035 |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA  19101-7346 | BMO Harris Bank, N.A.<br>AIS Portfolio Services, LLC<br>4515 N. Santa Fe Ave.<br>Dept. APS<br>Oklahoma City, OK  73118-7901 |
| Capital One Buy Power<br>PO Box 31293<br>Salt Lake City, UT  84131-0293 | JPMorgan Chase Bank, N.A.<br>Bankruptcy Unit<br>700 Kansas Lane Floor 01 |

| | |
|---|---|
| | Monroe, LA 71203-4774 |
| Comenity Bank<br>PO Box 18278<br>Columbus, OH 43218 | Gregory K. Stern, P.C.<br>53 West Jackson, Suite 1442<br>Chicago, IL 60604-3536 |
| JPMorgan Chase Bank, NA<br>s/b/m/t Chase Bank USA, NA<br>c/o National Bankruptcy Services, LLC<br>PO Box 9013<br>Addison, TX 75001-9013 | Harvard Collection<br>4839 N. Elston Ave.<br>Chicago, IL 60630-2589 |
| ABT c/o Synchrony Bank<br>150 Corporate Blvd.<br>Norfolk, VA 23502-4952 | Ally Financial<br>200 Renaissance Center #B0<br>Detroit, MI 48243-1300 |
| Capital One<br>PO Box 31293<br>Salt Lake City, UT 84131-0293 | Capital One Platinum<br>PO Box 31293<br>Salt Lake City, UT 84131-0293 |
| Citibank Advantage<br>PO Box 6241<br>Sioux Falls, SD 57117-6241 | Internal Revenue Service<br>Mail Stop 5014CHI<br>230 South Dearborn Street<br>Room 2600<br>Chicago, IL 60604-1705 |
| One Main Financial<br>PO Box 1010<br>Evansville, IN 47706-1010 | Portfolio Recovery Assoc.<br>PO Box 41067<br>Norfolk, VA 23541-1067 |
| Santander Consumer USA Inc.<br>PO Box 961245<br>Fort Worth, TX 76161-0244 | US Bank<br>PO Box 5229<br>Cincinnati, OH 45201-5229 |
| Midland Credit Management, Inc.<br>PO Box 2037<br>Warren, MI 48090-2037 | OneMain Financial<br>PO Box 3251<br>Evansville, IN 47731-3251 |
| Rachel Stern Sandler<br>53 W Jackson Blvd. #1442<br>Chicago, IL 60604-3536 | John Scramuzzo<br>721 Oriole<br>Park Ridge, IL 60068-2749 |
| TCF Bank<br>Corp. Headquarters<br>2508 South Louise Ave.<br>Sioux Falls, SD 57106-4331 | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| JOSEPH SEVERINO | ) | Case No.: 22-00769 |
| | ) | Hon. Timothy A Barnes |
| Debtor. | ) | |
| | ) | Presentment of Motion: |
| | ) | January 11, 2023, 9:00 a.m. |

**AMENDED MOTION TO DISMISS OR CONVERT CASE FROM 11 TO 7**
**BY PATTEN FAMILY FINANCE, LLC**

Patten Family Finance, LLC ("Patten"), by and through its undersigned attorneys, moves the Court to dismiss or convert this case to one under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b).

Pursuant to Section 1112(b)(1), a court must either dismiss or convert a Chapter 11 case to one under Chapter 7, whichever is in the best interests of the creditors and the estate, when the movant has demonstrated "cause" by a preponderance of evidence. *In re Bovino*, 496 B.R. 492, 499 (Bankr. N.D.Ill. 2013) (Barnes, T.), citing *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D.Ill. 2011); *In re Lake Michigan Beach Resort, LLC*, 547 B.R. 899, 903 (Bankr. N.D.Ill. 2016) (Barnes, T.), citing *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994). "However, '[o]nce the movant shows 'cause,' the burden shifts to the debtor to establish one of two exceptions in section 1112(b).'" *Bovino*, 496 B.R. at 498, quoting *Draiman*, 450 B.R. at 826. The decision whether to dismiss or convert is in the court's discretion.

Cause exists to dismiss or convert this case to Chapter 7 because: (i) there has been continuing diminution of the estate and there is an absence of a reasonable likelihood of rehabilitation (Section 1112(b)(4)(A)); (ii) Debtor's failure to maintain the appropriate insurance on the property located at 1392 W. Old Mill Rd., Lake Forest, Illinois (the "Lake Forest Property")

and other property of the estate (Section 1112(b)(4)(C)); (iii) Debtor's failure to pay the real estate taxes that have become due on the Lake Forest Property (Section 1112(b)(4)(I)); and (iv) there is no reasonable likelihood that Debtor will be able to confirm a Subchapter V plan.

## ARGUMENT

Section 1112(b)(1) states:

> Except as provided in paragraph 2 and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate.

Section 1112(b)(4) enumerates examples of what constitutes "cause" but this is not an exhaustive list. *In re Royalty Properties, LLC*, 604 B.R. 742, 747 (Bankr. N.D.Ill. 2019) ("Section 1112(b)(4) provides a non-exhaustive list of examples of 'cause'."); *Bovino*, 496 B.R. at 499 ("Section 1112(b)(4) lists different actions included in the definition of 'cause,' but that list is not exhaustive."). Further, "cause" warranting dismissal or conversion to Chapter 7 also includes the lack of "reasonable likelihood of confirming a plan." *In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D.Ill. 2018); *see also In re Burgess*, 2013 WL 5874616 (Bankr. N.D.W.V., Oct. 30, 2013) citing *In re Ramreddy, Inc.*, 440 B.R. 103, 113 n. 26 (Bankr. E.D.Pa. 2009) (a debtor's inability to propose a feasible plan, by itself, constitutes cause for conversion).

**I.  Cause to dismiss or convert exists pursuant to Section 1112(b)(4).**

Although any one of the examples enumerated in Section 1112(b)(4) is sufficient to constitute cause for dismissal or conversion, not less than three of the statutory examples exists in this case. *In re Congaree Triton Acquisitions, LLC*, 492 B.R. 843, 851 (Bankr. D.S.C. 2012) ("The presence of any one of these statutory factors, or other factors deemed important by the bankruptcy court, is sufficient to warrant dismissal or conversion."), quoting *In re Jackson*, 1997 WL 467534 at *3 (4th Cir., Aug. 15, 1997).

### A. Section 1112(b)(4)(A)

Cause exists pursuant to Section 1112(b)(4)(A) which provides that a case must be dismissed or converted if (i) there is "substantial or continuing loss to or diminution of the estate", and (ii) there is an "absence of a reasonable likelihood of rehabilitation."

#### 1. There is continuing diminution of the estate.

Patten holds a first priority security interest in the Lake Forest Property and John and Jacquie Urbano (collectively, the "Urbanos") hold a second priority security interest. As of December 9, 2022, Patten's secured claim is $1,243,919.37[1] and the Urbanos secured claim is $719,493.03[2]. In *Debtor's First Amended Plan of Reorganization*, (Dkt. #76) (the "Plan) Debtor values the Lake Forest Property at "$2,800,000 or more.[3]" Thus, by Debtor's own admission, both Patten and the Urbanos are oversecured, and Debtor had equity in the Lake Forest Property as of August 23, 2022, the date on which the Plan was filed.

However, the equity Debtor has in the Lake Forest Property is quickly deteriorating. Pursuant to Section 506(b), as oversecured creditors, Patten and the Urbanos are entitled to postpetition interest and reasonable fees, costs and other charges. With the passage of time, interest, fees and costs on Patten and the Urbanos' claims have accrued, and will continue to accrue, and Debtor's equity in the Lake Forest Property diminishes, leaving less value available for payment to Debtor's other creditors.

---

[1] This amount includes attorneys' fees incurred by Patten through November 30, 2022. Attorneys' fees Patten has incurred since November 30, 2022, and will continue to incur until its secured claim is paid in full, will be added to Patten's secured claim.

[2] According to the Proof of Claim filed by the Urbanos on April 1, 2022, Claim No. 19. The Urbanos' claim has accrued interest, costs, expenses and attorneys' fees and nothing in this Motion should be construed as an attempt by Patten to limit or object to the Urbanos' claim.

[3] Debtor also submitted a Broker's Opinion of Value as Exhibit 3 to *Debtor's Response to Motion to Convert* (Dkt. #74) in which the broker opines that the value of the Lake Forest Property is $2.8 Million.

3

In the 11 months since the Petition Date, because Debtor has no income he has "deferred" payments to his other secured creditors and to unsecured creditors, including creditors that provide routine services, increasing the debts owed to these creditors. See Monthly Operating Reports (identified below). Further, no administrative expense claims have been paid since the Petition Date. Debtor's failure to pay his debts as they come due diminishes the equity the bankruptcy estate has in the property of the estate.

Moreover, since owning the Lake Forest Property, Debtor has never paid the real estate taxes on the property. Specifically, Debtor has failed to pay real estate taxes owing as shown on the Estimate of Redemption (attached as Exhibit A) obtained from Lake County, Illinois, which indicates that due to Debtor's failure to pay real estate taxes owing for 2020 and 2021, Lake County sold the 2020 taxes on December 6, 2021, and the 2021 taxes on September 28, 2022, to Scribe Funding LLC ("Scribe"). As of December 5, 2022, the amount required to redeem the sold real estate taxes was $46,637.18.

Attached as Exhibit 2 to *Debtor's Response to Motion to Convert* (Dkt. #74), Debtor submitted a copy of an email message, purportedly from the Lake County taxing authority, indicating that a payment in the amount of $11,082.03 had been submitted on August 23, 2022, presumably to pay the first installment of the 2021 taxes that were past due on the Lake Forest Property. However, according to the Tax Bill from Lake County (attached as Exhibit B), the real estate taxes owing for 2021 were $21,209.64, and according to the Estimate of Redemption (Exhibit A), the 2021 taxes as of the date they were sold to Scribe, September 28, 2022, were $22,068.00. If Debtor had actually paid $11,082.03 on August 23, 2022, as he represented in *Debtor's Response to Motion to Convert*, the amount of 2021 taxes sold to Scribe would be much less than $22,068.00. Due to the discrepancy between Debtor's statement and the Estimate of Redemption, on December 5, 2022, counsel for Patten, Andrew Eres, contacted the Lake

4

County Clerk's office and was informed that the payment that was attempted on August 23, 2022, was returned NSF, and although the payment was originally applied, it was subsequently reversed[4]. On December 6, 2022, the Lake County Clerk's office sent an email message to the Lake County Treasurer's office, with a copy to Mr. Eres, asking for confirmation that Debtor's payment was rejected due to an NSF payment, with an excerpt from the Clerk's records showing the reversal of the attempted payment. A copy of the email from the Lake County Clerk is attached as Exhibit C. On December 7, 2022, the Lake County Treasurer's office responded to the Lake County Clerk's inquiry and confirmed that Mr. Severino's $11,082.03 payment was rejected for insufficient funds. In addition, the Treasurer's office went on to state that Mr. Severino was sent an email from the Treasurer's office on August 29th stating that the Treasurer's office was made aware of the rejected payment and an additional $25 was added to the remaining balance, a fact the Debtor failed to inform Patten and this Court. A copy of the email from the Lake County Treasurer's office is attached as Exhibit D.

Debtor's failure to pay real estate taxes represents a continuing risk of loss to Debtor's creditors and estate, particularly if the taxes remain unpaid as of the June 27, 2024, the redemption period expiration for the tax sale, resulting in Scribe being entitled to the issuance of a tax deed which would extinguish not only Patten and the Urbanos' security interests but Debtor's equity as well.[5]

---

[4] Even if Debtor had made a payment on August 23, 2022 as he asserted, the balance of the 2021 taxes came due on September 6, 2022, which Debtor did not pay, resulting in Debtor's failure to pay property taxes that have come due since the Petition Date.

[5] In order to protect its security interest, prepetition, Patten paid taxes for tax year 2019, which had been sold by Lake County and were in the redemption period in the amount of $52,410.05. Patten has asserted reimbursement for its payment of these taxes in its Proof of Claim (Claim No. 11).

**2.    There is no reasonable likelihood of rehabilitation.**

"The issue of rehabilitation for purposes of Section 1112(b)(4)(A) 'is not the technical one of whether the debtor can confirm a plan, rather, whether the debtor's business prospects justify continuation of the reorganization effort.'" *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D.Ill. 2009), quoting *In re Rey*, 2006 WL 245735, *6 (Bankr. N.D.Ill. 2006). Here, Debtor's business and income prospects to do not justify continuation the Plan. To date, Debtor has filed eight Monthly Operating Reports for the periods ending February 28, 2022 (Dkt. #35), March 31, 2022 (Dkt. #42), April 30, 2022 (Dkt. #49), May 31, 2022 (Dkt. #53), July 31, 2022 (Dkt. #71), August 31, 2022 (Dkt. #103), September 30, 2022 (Dkt. #116) and October 31, 2022 (Dkt. #124).[6] In each of these Monthly Operating Reports, Debtor admits that he has failed to pay all of his bills on time, that he had $0 income, $0 cash receipts and $0 cash flow, and that he has "[m]ade arrangements or deferred payments" to numerous creditors. Debtor has made no financial progress since the Petition Date.

Further, in the Plan, Debtor proposes to pay general unsecured creditors 100% of their allowed claims from proceeds of the sale of the Lake Forest Property to his wholly owned company, SevStar Investments LLC ("SevStar"). (See Plan, section 2.7). But, on August 23, 2022, the same day as the Plan was filed, Debtor filed *Debtor's Motion to Sell Real Property Pursuant to 11 U.S.C. §363* (Dkt. #78) (the "Sale Motion") in which Debtor requested authority to sell the Lake Forest Property to SevStar. The Purchase Agreement, which was attached to the Sale Motion, states that the purchase price SevStar was to pay for the Lake Forest Property was equal to the amounts required to pay Patten and the Urbanos' respective secured claims and the

---

[6] Debtor's failure to timely file the Monthly Operating Report for June, 2022, which was due on July 15, 2022 (Fed.R.Bankr.P. 2015(a)(6)) is an additional basis for cause for conversion pursuant to Section 1112(b)(4)(F).

6

administrative expense claims, only. In contradiction to section 2.7 of the Plan, the Sale Motion states that SevStar will pay unsecured creditors within 18 months following the Closing of the sale to SevStar from SevStar's "revenue generating business opportunities" that SevStar will derive from its ownership of the Lake Forest Property.

On October 18, 2022, the Court entered *Order Granting Debtor's Motion to Sell Real Property Pursuant to 11 U.S.C. §363* (Dkt. 112) (the "Sale Order"), granting the Sale Motion and authorizing Debtor to sell the Lake Forest Property to SevStar pursuant to the terms of the Sale Motion and the attached Purchase Agreement, which provided that the Closing on the transaction must occur within 30 days from entry of the Order. The 30-day deadline occurred on November 17, 2022, but the Closing did not occur by that deadline. Therefore, Debtor's authority to sell the Lake Forest Property to SevStar has expired, and Debtor does not currently have authority to sell the Lake Forest Property to SevStar nor any other person or entity.

Debtor's sale of the Lake Forest Property to SevStar is the cornerstone of the Plan. Because Debtor failed to close on the sale pursuant to the terms of the Sale Order, the Plan also fails. Because the sale to SevStar did not occur, Debtor's unsecured creditors cannot be paid from the proceeds of the sale (as provided in the Plan) or by SevStar 18 months after the closing of the sale (as provided in the Sale Motion). Debtor has had $0 income since the commencement of this bankruptcy case and has shown no ability to generate any income that can be used to pay *any* of his creditors. Debtor simply does not have the means to rehabilitate.

> Here, for starters, the Court notes that there is no operating business, no cash flow, no revenues, and no incremental progress toward the filing of a feasible plan. The Debtor has simply failed to demonstrate that he has any tangible capitalization, enforceable financing, or cash flow that can support his current obligations or plan objectives. *See In re Kanterman*, 88 B.R. 26, 28-29 (finding no likelihood of rehabilitation when debtor lacked independent income and was not meeting any post-petition obligations, including tax obligations). Chapter 11 cases do not reorganize on hope, interminable litigation, delays, or an absence of financial resources.

7

*In re Sakon*, 617 B.R. 7, 15-16 (Bankr. D.Conn. 2020).

Debtor has no business to rehabilitate or income prospects that justify continuing this Subchapter V case and thus, cause exists to dismiss or convert the case to one under Chapter 7.

**B.    Section 1112(b)(4)(C)**

Under Section 1112(b)(4)(C), a Chapter 11 case must be dismissed or converted when a debtor "fail[s] to maintain appropriate insurance that poses a risk to the estate or to the public." In June 2022, Debtor submitted a Declaration[7] to Patten, purportedly evidencing a current valid insurance policy on the Lake Forest Property with State Farm Fire and Casualty Company ("State Farm"). However, when a Patten representative inquired to State Farm about the policy she was informed that the Declaration was merely a proposal and that the policy was not in effect because the premium had never been paid.

On June 23, 2022, Patten filed *Amended Motion to Dismiss or Convert* (Dkt. #51) (the "First Motion to Convert"), asserting that "cause" existed to dismiss or convert this case to chapter 7 based on, among other things, Debtor's failure to insure the Lake Forest Property. Facing certain dismissal or conversion of his bankruptcy case for his failure to properly insure bankruptcy estate property, Debtor attached to *Debtor's Response to Motion to Convert* (Dkt. #74) Exhibit 2, an insurance declaration from State Farm for policy no. 93-LT-K983-4 (the "Sevstar Policy"), that names Sevstar LLC as the policyholder, with a coverage term of July 1, 2022 to July 1, 2023. However, in October 2022, Patten received a Cancellation Notice (attached as <u>Exhibit E</u>) from State Farm that stated that the SevStar Policy would be canceled effective October 27, 2022 due to non-payment of premium. Just as he had done with payment of property taxes, Debtor obtained insurance on the Lake Forest Property only to ward off

---

[7] A copy of the Declaration was attached as Exhibit C to Patten's *Amended Motion to Dismiss or Convert* (Dkt. #51).

8

dismissal or conversion of this bankruptcy case, but allowed the insurance to lapse shortly thereafter for non-payment of premium. Debtor maintained insurance on the Lake Forest Property for only a short period, not the entire 11 months since the Petition Date, obtained insurance only for long enough to prevent the otherwise inevitable dismissal or conversion of this bankruptcy case, and does not currently maintain valid insurance on the Lake Forest Property. Debtor's failure to maintain insurance on the Lake Forest Property poses a risk to the estate. The Lake Forest Property is currently insured only to the extent of Patten's forced-place insurance, which Patten maintains only to protect its own security interest.

The Debtor has also admitted that insurance policies have been canceled since the Petition Date. Under the Questionnaire portion of the Monthly Operating Reports for the months of April, July, August, September and October, in answer to item no. 13 that asks "Did any insurance company cancel your policy?" Debtor marked the box indicating "yes."[8]

Debtor's failure to maintain insurance on the Lake Forest Property constitutes cause to convert this case to Chapter 7. *See In re Dickey*, 559 B.R. 547 (D.Mass. 2016); *In re Sanders*, 2010 WL 5136192 (Bankr. D.S.C., Apr. 29, 2010); *In re Gilroy*, 2008 WL 4531982 (1st Cir. BAP, Aug. 4, 2008).

C. **Section 1112(b)(4)(I)**

Section 1112(b)(4)(I) provides that a case must be dismissed or converted when the debtor "fail[s] timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief". The Estimate of Redemption (Exhibit A) indicates that the real estate taxes for the Lake Forest Property for 2020 and 2021 were sold to Scribe due to

---

[8] On November 30, 2022, the Court entered an Order (Dkt. #126) granting Ally Bank's *Motion for Relief from Stay* (Dkt. #120) relating to one of Debtor's vehicles, based, at least in part, on Debtor's failure to produce evidence of insurance on the vehicle.

9

nonpayment. As of December 5, 2022, the total amount required to redeem is $46,637.18, which includes taxes for 2021 – that came due in 2022 after the Petition Date and were not paid. Debtor's failure (and inability) to pay the real estate taxes owing after the Petition Date constitutes cause to dismiss or convert this case to Chapter 7 pursuant to Section 1112(b)(4)(I). *In re Aleshire*, 589 B.R. 154 (N.D.Ill. 2018); *In re Park*, 436 B.R. 811 (Bankr. W.D.Va. 2010).

        **I.**        **There is no reasonable likelihood that Debtor will be able to confirm the Plan.**

The cornerstone of the Plan is sale of the Lake Forest Property to SevStar that Debtor failed to complete by the Closing deadline required by the Sale Order and Debtor does not currently have authority to sell the Lake Forest Property to SevStar or any other person or entity.

Debtor will likely propose that he be given an opportunity to amend his Plan to provide for the marketing and sale of the Lake Forest Property to a non-affiliated party. However, amendment would not be feasible because the Debtor is unlikely to effect a sale within a reasonable time as shown by his previous actions and track record.

At the Status Hearing on November 30, 2022, Debtor's attorney, Mr. Weissberg, stated that Debtor was contacted by a broker who stated that he has a potential buyer for the Lake Forest Property for a purchase price of $3.5 Million. Mr. Weissberg further stated that if that deal does not come to fruition, the fallback would be completing the Closing of the sale to SevStar "in a couple of weeks." Debtor has offered no evidence of a firm written offer to purchase the Lake Forest Property for any price, and as stated above, Debtor currently has no authority to sell the Lake Forest Property to SevStar or anyone.

Patten would welcome an actual sale of the Lake Forest Property to a legitimate buyer who has presented a binding written purchase offer with a closing in a reasonable amount of time - but that is not the type of offer Debtor disclosed at the Status Hearing. What Debtor disclosed is a purported unsolicited verbal offer made while the Lake Forest Property is not currently being

actively marketed, with a relatively high purchase price being offered (compared to the value Debtor has asserted) even though no competing purchase offers have been made. Without the presentment of a binding written purchase offer, it is difficult to believe that any buyer who actually has the financial means to close on a $3.5 Million sale would make such an offer under these circumstances.

During negotiations between Patten, the Urbanos and Debtor on the terms of the Sale Order, Debtor proposed provisions that would allow Debtor not less than 6 months to sell the property to SevStar or find alternative means of refinancing in the event that the Closing to SevStar did not occur. Under the Debtor's proposal, the process of marketing and selling the Lake Forest Property to a non-affiliated party would commence only after all other efforts failed. This proposal speaks to Debtor's desire to hold on to the Lake Forest Property for as long as he can before he will attempt to sell it to a disinterested party. Further, Debtor's record suggests that Debtor would not effect a sale within a reasonable period of time. On August 23, 2022, Debtor filed *Debtor's Application to Appoint Real Estate Broker* (Dkt. #80) seeking authority to engage a real estate broker to market 721 Oriole Avenue, Park Ridge, Illinois (the "Park Ridge Property") for sale. The Court entered an Order granting that motion on September 7, 2022 (Dkt. #99) but to date, 3 months after the Order was entered, Debtor has not disclosed a potential buyer for the Park Ridge Property nor filed a motion to sell the Park Ridge Property. Given Debtor's inability to identify a buyer for the Park Ridge Property within a reasonable time, and the timeframe he proposed during the negotiations on the Sale Order, even if Debtor is given an opportunity to amend his Plan the Court has reason to conclude that Debtor would not effect a feasible plan within a reasonable time.

Further, Section 1123(a)(5) requires Debtor to provide adequate means for his Plan's implementation. *See Aurora Memory Care,* 589 B.R. at 640 ("To demonstrate feasibility, a debtor need not guarantee the plan's success, but the debtor must give a 'reasonable assurance of

11

commercial viability.'") (internal citations omitted). As stated above, because the Closing of the sale to SevStar did not timely occur, and Debtor has no income, current employment or prospect for employment in the near future, Debtor has no means of implementing his Plan.

The Plan is the second Subchapter V plan filed in this bankruptcy case. The first plan was not feasible because it was dependent on Debtor obtaining refinancing for the Lake Forest Property that never materialized and Debtor commencing employment that never happened. The second, current Plan is dependent on Debtor's sale of the Lake Forest Property to his wholly owned company, SevStar (for which SevStar had to obtain financing) which did not occur in accordance with the Sale Order. Eleven months have passed since the Petition Date and Debtor's creditors are no closer to receiving distribution on their claims then they were when the automatic stay took effect. The only way for the creditors to have any hope of satisfying their claims in a timely manner is through the dismissal or conversion of this case. See *In re Woodbrook Associates*, 19 F.3d 312, 322 (7th Cir. 1994) (Finding that bankruptcy court did not abuse its discretion in dismissing chapter 11 case while denying debtor an opportunity to file a second amended plan, the Court stated: "A special aspect of the practice of bankruptcy is that it functions on a fluid set of facts, i.e., the plan can always be changed. And, for the most part, bankruptcy courts permit the parties to submit numerous and alternate plans. **Yet, bankruptcy courts are given a great deal of discretion to say when enough is enough.**") (emphasis added).

## CONCLUSION

Patten has demonstrated by a preponderance of evidence that cause exists for the Court to dismiss this Chapter 11, Subchapter V case or convert it to one under Chapter 7 of the Bankruptcy Code.

Respectfully submitted:

| Dated: December 13, 2022 | |
| --- | --- |
| | |
| | PATTEN FAMILY FINANCE, LLC<br><br>By: /s/ Dawn R. Copley<br>One of its attorneys |

Dawn R. Copley, MI P53343
DICKINSON WRIGHT PLLC
500 Woodward Ave., Suite 4000
Detroit, Michigan 48226
313.223.3108
dcopley@dickinsonwright.com

13