**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| JOSEPH SEVERINO, | |
| | Case No. 22-00769 |
| Debtor. | Hon. Timothy A. Barnes |

**AMENDED ORDER ON DEBTOR'S MOTION TO SELL REAL PROPERTY PURSUANT TO 11 U.S.C. § 363**

On October 18, 2022, the Court entered *Order on Debtor's Motion to Sell Real Property Pursuant to 11 U.S.C. § 363*, (Dkt. #112) (the "Sale Order"), granting *Debtor's Motion to Sell Real Property Pursuant to 11 U.S.C. § 363* [Dkt. #78] (the "Motion") to sell real property commonly known as 1392 West Old Mill Road, Lake Forest, Illinois 60045 (the "Property") to SevStar Investments, LLC ("Buyer"), in accordance with the terms of the Sale Order and pursuant to the Real Estate Contract appended to the Sale Order ("Real Estate Contract"). The Sale Order is hereby amended by the terms of this Order.

It is hereby ordered as follows:

1. The Real Estate Contract (appended to this Order) is amended in accordance with and to reflect the terms of this Order, whether or not such amendments are specifically identified in this Order.

2. Debtor is authorized to sell the Property to Buyer provided that the closing (the "Closing") of the sale occurs no later than February 9, 2023, and the Real Estate Contract is amended to state that the Closing must occur by no later than February 9, 2023.

3. This sale shall be free and clear of all liens and financial claims pursuant to § 363(b) and § 363(f) of the Bankruptcy Code, with all liens and financial claims to attach to the proceeds of sale of the Property, to the same extent as such liens and financial claims existed prior to the commencement of this Chapter 11 bankruptcy case, including, (i) the perfected, senior mortgage of Patten Family Finance, LLC ("Patten"), and (ii) the perfected junior mortgage of Jacquie Urbano and John Urbano (collectively, the "Urbanos"), provided that no later than 2:00 p.m. Central Time (the "Payoff Time") on the date on which the Closing occurs (the "Closing Date"), Buyer:

    a. Pays directly to Patten by wire transfer in accordance with the wiring instructions contained in the Patten Payoff Letter (defined below) the amount of $1,150,000.00 (the "Patten Payoff Amount"); and

    b. Pays directly to the Urbanos by wire transfer in accordance with the wiring instructions contained in the Urbano Payoff Letter (defined below) the amount of $721,000.00 (the "Urbano Payoff Amount").

4. Within one (1) business day after entry of this Order:

    a. Patten shall deliver via email to Debtor's attorney, Ariel Weissberg, a payoff letter (the "Patten Payoff Letter") (addressed to Mr. Weissberg and/or a person designated by Debtor in an email from Mr. Weissberg to Patten's attorney, Dawn Copley, on or before the date this Order is entered) stating that the Patten Payoff Amount is the amount necessary to pay off Loan No. 1140021 owing from the Debtor to Patten.

    b. The Urbanos shall deliver via email to Mr. Weissberg a payoff letter (the "Urbano Payoff Letter") (addressed to Mr. Weissberg and/or a person

designated by Debtor in an email from Mr. Weissberg to the Urbanos' attorney, William Hackney, on or before the date this Order is entered) stating that the Urbano Payoff Amount is the amount necessary to pay off the Loan owing from the Debtor to the Urbanos.

5. Provided that the Closing occurs no later than the Closing Date, the Patten Payoff Amount is remitted to Patten by no later than the Payoff Time, and the Urbano Payoff Amount is remitted to the Urbanos by no later than the Payoff Time:

   a. Patten has an allowed secured claim in this bankruptcy case in the amount of the Patten Payoff Amount ("Patten's Allowed Secured Claim"), *Debtor's Objection to Claim No. 11 Filed by the Patten Family Finance, LLC* (Dkt. #54) is deemed withdrawn, *Debtor's First Amended Objection to Claim No. 11 Filed by the Paten Family Finance, LLC* (Dkt. # 91) is deemed withdrawn, *Amended Motion to Dismiss or Convert From 11 to 7 by Patten Family Finance, LLC* (Dkt. #136) is deemed withdrawn, and Debtor is prohibited from filing or otherwise asserting any objections to Patten's Allowed Secured Claim; and

   b. the Urbanos have an allowed secured claim in this bankruptcy case in the amount of the Urbano Payoff Amount (the "Urbanos' Allowed Secured Claim"), and Debtor is prohibited from filing or otherwise asserting any objections to the Urbanos' Allowed Secured Claim.

6. The Purchase Price as defined in the Real Property Contract shall be equal to not less than the aggregate of: the Patten Payoff Amount and the Urbano Payoff Amount.

7. Paragraphs 5 and 6 of the Sale Order are superseded and vacated by this Order.

8. If:

  a. The Patten Payoff Amount is not paid to Patten by no later than the Payoff Time; and,

  b. The Urbano Payoff Amount is not paid to the Urbanos by no later than the Payoff Time,

then, notwithstanding any terms to the contrary in this Order or the Sale Order, Debtor has no authority to sell the Property to Buyer or any other person without further order of this Court.

9. The Patten Payoff Amount and the Urbanos Payoff Amount represent Patten and the Urbanos' Patten and the Urbanos' agreements to compromise their respective claims in this bankruptcy case pursuant to the terms of this Order. As such, if the Patten Payoff Amount and the Urbano Payoff Amount are not paid by no later than the Payoff Time such agreements to compromise are null and void and Patten and the Urbanos are entitled to assert the full amount of their claims in this bankruptcy case.

10. To the extent that there are conflicts between the terms of this Order and the Sale Order, the terms of this Order prevail and supersede the terms of the Sale Order.

Dated: February 1, 2023    ENTERED:

                 _____
                 Timothy A. Barnes, Judge
                 United States Bankruptcy Court

Ariel Weissberg, Esq.
Weissberg and Associates, Ltd.
564 W. Randolph, second floor
Chicago, Illinois 60661
312-663-0004
Email: ariel@weissberglaw.com
Attorney No. 0312559

## REAL ESTATE SALE AGREEMENT

THIS AGREEMENT is made and entered into this _____ day of August, 2022, by and between *Joseph Severino* (hereinafter referred to as "**Seller**") and *SevStar Investments, LLC*, an Illinois limited liability company (hereinafter referred to as "**Purchaser**").

### R E C I T A L S

A. Seller currently holds title to real estate commonly known as *1392 West Old Mill Road, Lake Forest, Illinois 60045* and legally described as on Exhibit 1, which, together with all improvements thereon and all easements, covenants, tenements, hereditaments and appurtenances thereunto belonging or appertaining and, without limiting the generality thereof, Seller's rights, easements or other interest, if any, in alleys, walls, sidewalks or other property abutting the said real estate shall hereinafter be referred to as the "**Real Estate**".

B. Purchaser desires to purchase the Real Estate and the Seller desires to sell the Real Estate pursuant to the terms and conditions of this Real Estate Sale Agreement.

### C O N S I D E R A T I O N

In consideration of the mutual covenants and promises of the parties, Seller and Purchaser hereby covenant and agree as follows:

### A G R E E M E N T

1. **Sale and Purchase:** Seller agrees to sell and Purchaser agrees to purchase the Real Estate upon the terms and conditions herein set forth for the following purchase price (hereinafter referred to as the "**Purchase Price**"):

   A. At Closing, the Purchaser will pay in full the amount of the indebtedness that the Seller owes to: (i) the Patten Family Finance, LLC ("Patten Family") as set forth in the Proof of Claim that the Patten Family filed on February 18, 2022 in the bankruptcy case captioned as, *In Re Joseph Severino*, case number 22-00769 ("Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division ("Bankruptcy Court"); (ii) Jacquie Urbano and John Urbano ("Urbanos") as set forth in the Proof of Claim that the Urbanos filed on April 1, 2022 in the Bankruptcy Case; and (iii) any administrative claims in the Bankruptcy Case.

   B. On or before 18 months from the date of the Closing ("Deadline"), the Purchaser will pay the balance of the allowed claims of the Purchaser's creditors, other than those creditors that will be paid in full from the sale of the real property commonly known as 721 Oriole Avenue, Park Ridge, Illinois and not including Ally Finance and Satander Consumer USA, Inc. ("Unpaid Creditors").

   In the event that the Purchaser shall fail to pay the Unpaid Creditors in full by the

Deadline, the parties agree that Seller has the irrevocable power of attorney of the Purchaser, with an interest: (x) to retain a real estate broker to market and procure buyers for the Real Estate pursuant to a written Listing Agreement; (y) execute in the Purchaser's name and stead a Listing Agreement to retain a real estate broker; (z) accept any offers for the sale of the Real Estate; (xx) execute, deliver and amend any real estate contract for the sale of the Real Estate; (yy) execute all documents necessary to sell the Real Estate; (xx) disburse all closing proceeds from the sale of the Real Estate, including the prompt payment of the Unpaid Claims, which will be paid no later than 7 days from the date of the sale. Until the Unpaid Claims are paid in full, Purchaser shall not allow or cause to be recorded against the Real Estate any consensual or non-consensual liens against the Real Estate.

2.　**Conveyance:**　Seller agrees to convey (or to cause its successors, if any, to convey) to Purchaser title to the Real Estate by a recordable, stamped Warranty Deed, subject only to: (a) general real estate taxes not due and payable as of the date of the closing hereof; (b) acts of Purchaser and those parties acting through or for Purchaser; (c) zoning laws, statutes and ordinances; and (d) those additional matters set forth on attached Exhibit 2 hereto.

3.　**Credits:**　Purchaser shall be given no credits against the Purchase Price, including for real estate taxes.

4.　**Closing:**

(a)　The consummation of the transaction herein described (hereinafter referred to as the "**Closing**") shall be on or after 15 days from the entry of an Order of the Bankruptcy Court in the Bankruptcy Case approving the terms of this Contract ("Order Approving"), as may be amended, but in any event no later than 30 days from the date of the entry of the Order Approving, at the office of Truly Title Insurance Company (the "**Title Insurer**") in Chicago, Illinois or at such other location as is acceptable to Purchaser and Seller, provided title is shown to be in the condition required herein or is otherwise acceptable to Purchaser. The transactions memorialized herein are conditioned on and subject to the entry of the Order Approving. At the Closing, the parties shall deliver all documents required by this Agreement.

(b)　The transaction herein contemplated shall be closed through an escrow with NATC, in accordance with the general provisions of the usual form of Deed and Money Escrow Agreement then in use by said company, with such special provisions inserted in the escrow agreement to permit an immediate ("**New York-Style**") closing and as otherwise may be required to conform with this Agreement. Upon the creation of such an escrow, anything herein to the contrary notwithstanding, payment of the Purchase Price and delivery of deed shall be made through the escrow and the cost of said escrow shall be shared equally by the parties.

(c)　At the Closing, Seller shall deliver to Purchaser the following documents

and tender the following performance:

(i) A warranty deed ("**Deed**"), conveying title to the Real Estate, in the condition required herein, to Purchaser or its nominee;

(ii) An Illinois Transfer Declaration;

(iii) Any transfer declaration or other documentation required to comply with any local real estate transfer ordinance as to the conveyance of the Real Estate;

(iv) A Non-Foreign Affidavit, prepared in compliance with the requirements of Internal Revenue Code section 1445(e), from the Seller;

(v) An ALTA statement in the form customarily required by NATC;

(vi) A so-called GAP Undertaking in the form customarily required by NATC in order to conduct the Closing as a so-called "New York Style" closing, together with such affidavits as are customarily required by Title Insurer in connection with issuance of the Owner's Title Insurance Policy, described in Paragraph 7 below, including a mechanics' lien and judgment affidavit; and

(vii) Such other documents and performance as may be required of Seller and inferred herefrom in order to cause Seller to comply with its obligations hereunder.

(d) At the Closing Purchaser shall deliver to Seller the following documents and tender the following performance:

(i) The Purchase Price together with any and all such additional funds as may be required to pay the other costs and expenses of Purchaser, shall be deposited by Purchaser into the Closing Escrow (hereafter defined), by wire transfer, in funds of the United States, plus or minus prorations;

(ii) An ALTA Statement in the form customarily required by NATC;

(iii) Such affidavits as are customarily required by the Title Insurer in connection with issuance of the Owner's Title Policy;

(iv) Certified resolutions of the Purchaser authorizing the execution and performance of this Agreement by Purchaser; and

(v) All other documents, instruments or writings which may be

reasonably required of Purchaser to consummate the transactions contemplated herein.

(e) At the Closing, Seller and Purchaser shall jointly execute and deliver to each other:

(i) Escrow trust instructions for the contemplated New York Style Closing in the form customarily in use by Chicago Title Insurance Company, but modified to the extent required to comply and conform with the terms hereof (the "**Closing Escrow Instructions**");

(ii) A closing statement in form acceptable to the Title Insurer; and

(iii) All transfer declarations required by law to be jointly executed by the parties.

5. **Delivery of Possession:** Purchaser shall accept the Real Estate subject to the rights and interests of the Seller to lease the Real Estate pursuant to the terms of a written Lease, that is mutually acceptable to the Seller and the Purchaser.

6. **Condition:** Purchaser agrees to accept the Real Estate in its as-is condition (see paragraph 32 below).

7. **Evidence of Title: Survey:** Seller shall deliver, or cause to be delivered, to Purchaser or Purchaser's nominee, within fifteen (15) days after the Acceptance Date of this Agreement a current title commitment (the "**Title Commitment**") from the Title Insurer for a 2006 ALTA Owner's Title Insurance Policy in the amount of the Purchase Price (the "**Title Policy**"). The aforesaid Title Commitment shall show title in the Seller subject only to (i) the general exceptions to the policy, (ii) general real estate taxes not due and payable as of the date of the closing hereof; acts of Purchaser and those parties acting through or for Purchaser; zoning laws, statutes and ordinances; those additional matters set forth on attached Exhibit 2 hereto (all of which are herein referred to as the "**Permitted Exceptions**"). At the Closing the Seller shall cause the Title Policy to be upgraded at Seller's expense so as to include extended coverage over the general exceptions to the Title Policy. The Title Policy issued shall be conclusive evidence of good title as therein shown as, subject only to the exceptions therein stated. The parties waive any survey requirement.

8. **No Inspection Period:** Because Purchaser has previously inspected the Real Estate, there shall be no so-called "due diligence inspection period" provided for herein.

9. **Prorations and Closing Adjustments:**

(a) Purchaser shall pay the amount of any stamp or transfer tax imposed by the State of Illinois, the County or municipality in which the Real Estate is located.

(b) General real estate taxes and assessments shall be not be prorated.

(c) Purchaser agrees to pay at the Closing all (i) the Title Insurer's charge for the required Owner's Title Policy (including the cost imposed by the Title Insurer for issuing the extended coverage endorsement), (ii) the Title Insurer's charges to clear or insure over any unpermitted title exception; (iii) one-half of the escrow closing and New York Style closing fees charged by CTIC; (iv) any costs and expenses payable to any qualified intermediary, trustee or any other third parties (excluding Purchaser and its attorneys or advisors) related to the implementation of any tax-deferred exchange procedure requested by Seller; and (v) all recording fees with respect to clearing Seller's title.

10. **Choice of Law:** This Agreement shall be governed by the laws of the State of Illinois.

11. **Miscellaneous:** If the date for Closing or performance of an obligation falls on a Saturday, Sunday or holiday, the date shall be deferred until the first business day following. No amendments, modifications or changes shall be binding upon a party unless set forth in a duly executed document.

12. **Non-Foreign Affidavit:** Seller shall provide Purchaser, on or before the Closing Date, with a non-foreign affidavit sufficient in form and substance to relieve Purchaser of any and all withholding obligations under federal law, which affidavit shall be substantially in a form reasonably acceptable to Purchaser.

13. **Broker:** Purchaser and Seller hereby represent to each other that neither of them have had any dealings with respect to the Real Estate with any broker or real estate dealer..

14. **Breach: Remedies: Termination:**

(a) If this Agreement is breached by Purchaser, then Seller may, as its sole and exclusive remedy, either (i) declare this Agreement null and void, or (ii) Seller may seek specific performance of Purchaser's obligations hereunder.

(b) If this Agreement is breached by Seller, then Purchaser may, as its sole and exclusive remedy either (i) declare this Agreement null and void, or (ii) Purchaser may seek specific performance of Seller's obligations hereunder.

(c) If this Agreement is terminated other than by reason of the breach hereof by either party, then all Earnest Money shall be refunded to Purchaser.

15. **Legal Fees:** In any action or proceeding between the parties arising out of or in connection with this agreement or the breach or enforcement hereof, the party prevailing in such proceeding shall be entitled to recover his costs and expenses (including reasonable attorney's fees)

from the non-prevailing party.  In any such action, venue shall properly (although not exclusively) lie in the Circuit Court of Cook County, Illinois.

      16.    **Authority to Execute:**  If Purchaser or Seller is other than a natural person (i.e., is an "entity") then such party hereby covenants that the execution of this Agreement and the performance of the transaction herein contemplated have been duly approved by all necessary action of the governing authority of the entity and that the party executing this Agreement on behalf of such entity is authorized to do so.

      17.    **Entire Agreement.**  This Agreement contains the entire agreement of the parties with respect to the sale and purchase of the Real Estate.  All previous and contemporaneous negotiations, understandings and agreements between the parties hereto, with respect to the transaction set forth herein, are merged in this instrument, which along fully and completely expresses the parties' rights and obligations.

      18.    **Terms:**  As used herein, the terms (a) "**person**" shall mean an individual, a corporation, a partnership, a trust, an unincorporated organization or any agency or political subdivision thereof, (b) "**including**" shall mean including, without limiting the generality of the foregoing, and (c) the masculine shall include the feminine and the neuter.

      19.    **Binding Effect and Survival:**  This Agreement shall be binding upon and shall insure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.  No assignment of this Agreement shall relieve the assigning party of his/its/their obligations hereunder.

      20.    **Captions:**  The captions of this Agreement are inserted for convenience of reference only and in no way define, described or limit the scope of intent of this Agreement or any of the provisions hereof.

      21.    **As is:**  It is hereby agreed that except as otherwise expressly set forth herein, (i) Seller has made no representations or warranties concerning the physical condition of the Real Estate except as may be expressly contained in this Agreement and (ii) Purchaser has agreed to purchase the Real Estate in its "as is/ where is" condition.

      22.    **Closing Conditions:**

            (a)    Purchaser's obligation to proceed to Closing hereunder is expressly subject to the fulfillment of the following:

                  (i)    **Seller Deliveries.**  Seller shall have delivered all of the documents and other items required pursuant to Paragraph 4(c) and shall have performed all other covenants, undertakings and obligations required by this Agreement to be performed or complied with by Seller at or prior to Closing.

                  (iii)    **No Prior Termination.**  Purchaser shall not have properly exercised

        any other right to terminate this Agreement as expressly provided herein.

    (b)    Seller's obligation to proceed to Closing hereunder is expressly subject to the fulfillment, as of the Closing of the following conditions precedent, any one or more of which Seller may, in its sole discretion, elect in writing to waive. If any one or more of the conditions enumerated in this Paragraph is not fulfilled or waived as of the Closing then, except as may otherwise be expressly provided herein, the Seller shall have the right, as its sole remedy, to declare this Agreement terminated, null and void.

        (i)    **Purchaser Deliveries.**  Purchaser shall have delivered all of the documents and other items required pursuant to Paragraph 4(d) and shall have performed all other covenants, undertakings and obligations required by this Agreement to be performed or complied with by Purchaser at or prior to Closing; and

23.    **Counterparts.**  This Agreement may be executed in multiple counterparts, all of which, together, shall constitute one and the same agreement.  Further, photocopies, facsimile transmissions and other reproductions of this Agreement and / or the signatures hereon shall be the equivalent of originals.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Real Estate Sale Agreement as of the day first above written.

**SELLER:**

_____
Joseph Severino

**PURCHASER:**

**SevStar Investments, LLC**

By:_____ _____
Name:_____
Title: _____

**EXHIBIT 1**

**Legal Description of Real Estate**

Tax identification number:  16-07-301-080

Common Address:  *1392 West Old Mill Road, Lake Forest, Illinois 60045*

## EXHIBIT 2

**Additional Permitted Title Exceptions**

1. Zoning and building laws and ordinances*;*

2. General real estate taxes;

3. Matters suffered or created by Purchaser; and,

4. The rights of the creditors that are to be paid for the Unpaid Claims.